ROB BONTA
Attorney General of California
ANDREA R. AUSTIN
Supervising Deputy Attorney General
DAVID S. KIM
Deputy Attorney General
State Bar No. 324531
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-6151
 Fax:  (916) 324-5567
 E-mail:  David.Kim@doj.ca.gov
*Attorneys for Defendant*
*California Highway Patrol*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADRIAN ROMERO, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA HIGHWAY PATROL, and DOES 1 THROUGH 20, inclusive,**<br><br>Defendants. | **Temporary Case No.:  2:21-at-01012**<br><br>**Superior Court No.:  34-2021-00305203**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1331 AND 1441(b) (FEDERAL QUESTION)**<br><br>Action Filed:  July 30, 2021 |

1

TO THE CLERK OF THE UNITED STATES FEDERAL COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant California Highway Patrol ("CHP") hereby removes this above-entitled action to this Court from the Superior Court of the State of California, County of Sacramento.  The grounds for removal are as follows:

1.  On July 30, 2021, Plaintiff Adrian Romero, Jr. filed a complaint in the Superior Court of the State of California, in and for the County of Sacramento, entitled *Adrian Romero, Jr. v. California Highway Patrol*, designated as case number 34-2021-00305203.  A copy of this complaint is attached thereto as **Exhibit A**.  Plaintiff did not serve this complaint on CHP.

2.  On September 28, 2021, Plaintiff filed a First Amended Complaint ("FAC").  A copy of the summons and FAC are attached thereto as **Exhibit B**.

3.  Plaintiff's FAC purports to allege causes of action against CHP for (1) Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203 et seq.; (2) Whistleblower Retaliation in Violation of Cal. Labor Code § 1102.5; (3) Violation of California Whistleblower Protection Act, Cal. Gov. Code § 8547 et seq.; (4) Harassment in Violation of the Fair Employment and Housing Act, Cal. Gov. Code § 12940(j); (5) Retaliation in Violation of the Fair Employment and Housing Act, Cal. Gov. Code § 12940(h); and (6) Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of the Fair Employment and Housing Act, Cal. Gov. Code § 12940(k).

4.  On September 28, 2021, Plaintiff served his FAC upon CHP by personal service.  CHP is the only defendant named in this action, as of the date of this removal.

5.  This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed to this Court by CHP pursuant to 28 U.S.C. § 1441(b) by virtue of Plaintiff's first cause of action under the Americans with Disabilities Act, 42 U.S.C. § 12203 et seq.

///

1

6. CHP has not filed an Answer in the Superior Court of California, County of Sacramento, for this action.

7. This Notice of Removal is filed within thirty days after CHP was served a copy of the Summons and Complaint in this case and within one year after the state court action was filed. The Notice is also filed within thirty days of CHP's knowledge of its ability to remove. This Notice is therefore filed within the time period prescribed by 28 U.S.C. § 1446(b).

8. Venue lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 1391(a) & 1441(a) because the state action was filed in this District, and this is the judicial district in which the action arose.

WHEREFORE CHP prays that the above action now pending against it in the Superior Court of the State of California, County of Sacramento, be removed to this Court.

Dated: October 25, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
ANDREA R. AUSTIN
Supervising Deputy Attorney General

DAVID S. KIM
Deputy Attorney General
*Attorneys for Defendant*
*California Highway Patrol*

SA2021304925
35558687.docx

2

EXHIBIT A

1    DENISE EATON-MAY, ESQ. (SBN 116780)
LAW OFFICES OF DENISE EATON-MAY, PC

2    1290 B Street, Suite 316
Hayward CA 94541

3    Tel.: 510.888.1345
Fax: 510.315.3015

4    Email: denise.may@eaton-maylaw.com

5

6    Attorney for Plaintiff
ADRIAN ROMERO, JR

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                    COUNTY OF SACRAMENTO

**FILED**
Superior Court Of California,
Sacramento
07/30/2021
mwhitaker
By_____ , Deputy
Case Number:
**34-2021-00305203**

| | |
|---|---|
| ADRIAN ROMERO, JR., | **CASE NO.:** _____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. **Discrimination -Violation of Americans With Disabilities Act (ADA) (42 U.S.C § 12203 et. seq.) and Fair Employment and Housing Act (FEHA) (Gov Code § 12940(a)** |
| CALIFORNIA HIGHWAY PATROL, AND DOES 1 THROUGH 20, inclusive | 2. **Whistleblower Retaliation –(Cal. Labor Code 1102.5** |
| Defendants. | 3. **Violation of California Whistleblower Protection Act (WPA)- Cal Gov. Code § 8547 et seq.** |
| | 4. **Harassment - Violation of FEHA (Cal. Gov. Code § 12940(j))** |
| | 5. **Retaliation – Violation of FEHA(Cal. Gov. Code § 12940(h)** |
| | 6. **Failure To Prevent Discrimination, Harassment And Retaliation In Violation of FEHA (Cal. Gov. Code § 12940(k)** |
| | **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.    Plaintiff Adrian Romero Jr. ("Plaintiff" or "Mr. Romero"), by and through undersigned counsel, files this civil action Complaint and Jury Demand ("Complaint") against Defendant California Highway Patrol ("Defendant" or "CHP"). Plaintiff brings this action against his employer, the California Highway Patrol (hereinafter referred to as "CHP" and/or "Defendant") for discrimination, harassment and retaliation based on Plaintiff engaging in protective activity in violation of state and federal laws.

2.    The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

**NATURE OF COMPLAINT**

3.    This is a civil action in which Plaintiff, has been retaliated against at his place of employment as an Information Technology Supervisor I with the California Highway Patrol ("CHP"), as a result of engaging in protective activity when he reported a discrimination claim and exposing improper hiring practices by his direct Manager, Corleen Lambert.

4.    Immediately after reporting said conduct, Plaintiff received a series of adverse employment actions affecting his terms and conditions of employment, ranging from various disciplinary actions including, but not limited to a negative Performance Appraisal and denial of timely Merit Salary Increase. Defendant also wrongfully placed Plaintiff on Interim Reporting, wrongfully issued a Memorandum of Counseling, wrongfully issued Plaintiff a Memorandum of Direction, and engaged in continuous, severe, and pervasive  harassing behavior causing Plaintiff damages.

//

//

//

**THE PARTIES**

5.     Plaintiff, at all relevant times, is a resident in the County of Sacramento, State of California. At all times material to this action, Plaintiff was an employee of Defendant, the CALIFORNIA HIGHWAY PATROL ("CHP").

6.     Plaintiff is informed and believes and alleges thereon that Defendant CALIFORNIA HIGHWAY PATROL ("CHP")  is, at all times relevant hereto, has been and is  a state law enforcement agency, organized as part of the California State Transportation Agency ("CALSTA") maintaining a place of business at 601 N. 7th Street, Bldg. C Sacramento, CA 95811. CHP is a public entity within the definition of California Government Code § 811.2.

7.     At all times relevant hereto, Defendant CHP was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant CHP.

8.     The true names and capacities of Defendants named as DOES 1 through 20, inclusive, are presently unknown to Plaintiff. Therefore, Plaintiff sues said Defendants pursuant to Section 474 of the Code of Civil Procedure. Plaintiff will amend this complaint to set forth the true names and capacities of said Defendants, when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

9.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant named herein, was the agent and or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and or employment.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

10.     This is a complaint for damages for unlawful discrimination, harassment, and retaliation in employment, brought pursuant to the Fair Housing and Employment Act (FEHA) (Gov Code § 12940 et seq., and Title I of the Americans with Disabilities Act of 1990, as amended (ADA) (42 U.S.C § 12203 et. seq.).  This Court has jurisdiction over this matter in that the Plaintiff lives in Sacramento County and the Defendant's primary office is located in Sacramento County.

11.     Venue is proper pursuant to Cal. Civ. Proc. Code sec. 394(a).The events giving rise to the claims made herein occurred in Sacramento County, and Defendant CHP has its principal place of business/headquarters in Sacramento County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     On or about March 9, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") which was automatically dual filed with the California Department of Fair Employment and Housing (FEHA). On March 18, 2020, Plaintiff received  a Right to Sue from the DFEH which allows Plaintiff to file a lawsuit within one year from the date of the DFEH's notice of Right to Sue or within 90 days from receipt of the federal right to sue letter, whichever is later. The EEOC by and through the U.S. Department of Justice ("DOJ")issued a Notice of Right to Sue on April 30, 2021 and the same was received through electronic message on the same date. Accordingly, Plaintiff has exhausted his administrative remedies as to his discrimination claims. On or about October 14, 2020, plaintiff filed a claim with the State Personnel Board.  In December 2020, the State Personnel Board authorized Plaintiff to pursue civil action under Government Code 8547.

## PROCEDURAL BACKGROUND

13.     On March 9, 2020, Plaintiff  filed a formal complaint with the EEOC. On or about March 18, 2020 EEOC served Defendant CHP with the  Charge of Discrimination. Defendant CHP

had 30 days to respond or request an extension, but Defendant took no action. EEOC reached out to Defendant and offered a verbal extension in which they were given until September 4, 2020  to respond, however Defendant again failed to take any action. On September 16, 2020, EEOC submitted a Letter of Determination inviting both Plaintiff and Defendant to engage in conciliation in an effort to reach a resolution. On September 21, 2020, EEOC provided a proposed Conciliation Agreement between EEOC, Defendant, and Plaintiff, however Defendant indicated that they were unwilling to engage in conciliation. On September 24, 2020, EEOC issued a letter stating efforts to conciliate this matter were unsuccessful and the case was now being referred to the U.S. Department of Justice for its review. On April 30, 2021, the Right To Sue was issued.

## **FACTUAL BACKGROUND**

14.     Plaintiff commenced employment with the CHP on  July 25, 2018. He started as an Information Technology Associate under the supervision of Stanley Meeks, Supervisor I and Colleen Lambert ("Lambert"), Supervisor II. During his tenure as an Associate, Plaintiff received positive feedback regarding his performance. Plaintiff applied to the Information Technology  Supervisor I, and was offered the job.

15.     Plaintiff took the Information Technology Supervisor position in May 2019. The Information Technology Supervisor I position had a one-year probationary period from May 1, 2019, to April 30, 2020.

16.     On September 5, 2019, Plaintiff received his first performance review as an Information Technology Supervisor I. The performance appraisal  report was positive and stated that Plaintiff's performance was either standard or outstanding in all ten categories.

17.     On November 18, 2019, Plaintiff received a concerning email from Andy Roadman ("Roadman"), one of Plaintiff's direct reports. Roadman is an employee of CHP with a disability. Roadman informed Plaintiff that he did not get the lateral position that he applied to and expressed

his dissatisfaction with the way Lambert handled the hiring process. Roadman told Plaintiff that he believed that Lambert did not select him for the position because of his disability. In addition, he indicated that he believed that Lambert improperly showed preferential treatment or favoritism toward another applicant which Lambert knew personally, in violation of the civil service/merit system.

18.     On November 18, 2019, the same day that he received the email from Roadman, Plaintiff reported the discrimination claim of his subordinate. Due to the nature of Roadman's concerns, Plaintiff notified their Commander, Jay Song (as dictated by Defendant's policy) and referred Roadman to Human Resources (HR), both of whom Plaintiff believed were better suited to address Roadman's concerns. Plaintiff reasonably believed that Roadman's concerns violated EEO and/or ADA laws, being that Roadman is disabled, physically confined to a wheelchair, and was overlooked for a position he was well qualified for and was in fact already performing some of the job duties.

19.     According to CHP policy, HPM 10.12, Ch 6(12)(a)(1), "If any employee believes they have been discriminated against and brings it to the attention of a supervisor . . . the supervisor . . . shall notify the affected commander", Defendant's policy further states, "The supervisor . . . is legally obligated to ensure the work environment is free of discrimination.

20.     Plaintiff also referred Roadman's complaint to CHP's Human Resources. Plaintiff believed in good faith that there could be a violation of state or federal law by Lambert against Roadman in her failure to hire Roadman for the lateral position.

21.     On the next day, November 19, 2019, Plaintiff was called to the office of Lambert. Lambert accused him of violating the CHP rules. Lambert told Plaintiff that he broke the chain of command when he did not inform Lambert regarding Roadman's complaint. Lambert then accused

Plaintiff of violating the Chain of Command, despite Plaintiff having complied with CHP reporting policy.

22.    On November 21, 2019, Plaintiff was verbally chastised by his then  supervisor, Alfredo Rivera ("Rivera") for allegedly violating the chain of command when Romero notified Song and HR of the Roadman's complaint.

23.    After he reported the discrimination complaint of Roadman, Plaintiff immediately observed that the CHP management's treatment and attitude toward him changed. Prior to reporting Roadman's complaint, he communicated with management on a regular basis and attended management meetings. After November, 19,2019, he was kept out of the loop of communication on work related matters by Rivera and Lambert and  was excluded from meetings. In addition, management bypassed Plaintiff and directly communicated with Plaintiff's staff on work-related matters, thereby interfering with his ability to properly manage his team.

24.    Plaintiff also began to experience a series adverse employment actions. For example, on January 3, 2020, Rivera gave him a negative performance appraisal for the period covering September 26, 2019 to January 2, 2020.Plaintiff was not apprised before the performance appraisal of any concerns with his performance. In addition, the performance appraisal was not focused on the quality of Plaintiff's overall performance and effectiveness of his work. Instead,  Rivera  based his appraisal on four specific instances, one of which was that  Plaintiff failed to take Roadman's complaint through the chain of command.

25.    The report cites that Plaintiff needs improvement on 5 of the 10 areas, namely, Critical Tasks, Leadership, Judgment and Problem Solving, and Interpersonal Skills, and Administrative and Specialized Assignments. What was supposed to be a performance review became a write up as it alleged that Plaintiff had engaged in misconduct and was all of a sudden deficient in 5 of the 10 areas. The review alleged that: (1) Plaintiff was late on the October 23, 2019 weekly meeting and acted irate

with Rivera when Rivera approached him; (2) Plaintiff failed to take Roadman's complaint through the chain of command; (3) Plaintiff made negative comments about his team and portrayed a negative attitude; and (4) Plaintiff was non-responsive to requests and non-cooperative to administrative requests. Upon reading the appraisal, and meeting with Rivera on January 3, 2020, Plaintiff told Rivera that he felt he was "being targeted" and that "this was a personal attack" on him. Rivera directly responded, "Yes, this is personal."

26.     During the January 3, 2020 meeting, Rivera informed Plaintiff that he was being placed in Interim Reporting because of the alleged failure of the Plaintiff to meet the critical tasks in the January 3, 2021 performance appraisal. During the meeting, Mr. Mr. Rivera spoke to Plaintiff in a demeaning, harassing and disrespectful manner thereby creating a  work environment wrought with hostility causing Plaintiff emotional distress.

27.     On January 10, 2020, Plaintiff submitted a rebuttal to  his January 3, 2020 negative performance appraisal, stating among other things, that Rivera failed to follow the protocol with regard to Interim Reporting and that Rivera did not follow the performance review guidelines. Plaintiff also reported in his rebuttal regarding improper hiring practices of Lambert in the department and misconduct/violation of policy by Rivera.   Plaintiff requested that the review be redone, modified, or removed and that he report to someone else due to Lambert and Rivera's bias and personal animus toward him.

28.     On January 22, 2020, Plaintiff complained in writing to Commander Song about how Rivera intentionally deviated from the Performance Review Guidelines when Rivera issued a negative performance review on the Plaintiff. Plaintiff also reiterated his request for a review of the negative performance appraisal, the decision to place him on Interim Reporting and for a change in reporting structure due to Lambert Rivera's bias against him for forwarding Roadman's complaint and their personal retaliatory animus against him. . Plaintiff also included his rebuttal which contained the

allegations/claims of misconduct and violations of policy  by Lambert and Rivera. Without conducting any investigation into plaintiff's claims, Commander Song denied Plaintiff's requests.

29.     CHP's "Progressive Discipline Review Guidelines" require that certain disciplinary steps occur before placing Plaintiff on Interim Reporting. Highway Patrol Manual ("HPM") 10.10, Ch.5 3(c)(1) requires that one receive a Memorandum of Counseling, Corrective Memoranda, Memoranda of Direction, Censurable CHP2 before one is placed on Interim Reporting. Adherence to this process was confirmed by Commander Song at Defendants weekly managers meeting on October 7, 2019, where he stated that " Interim Reporting cannot not be the first action".

30.     At no point prior to placing Plaintiff on Interim Reporting did Rivera issue Plaintiff a Memorandum of Counseling, Corrective Memoranda, Memorandum of Direction; Censurable CHP2, Incident Report as required by the HPM.

31.     On January 31, 2020, Plaintiff met with Rivera and Isaac Ryland ("Ryland") Manager at CHP  to discuss his performance appraisal and placement on Interim Reporting. Plaintiff requested that  EEO counselor Deanna Silvera to be present in the meeting, but Ryland denied his request.

32.     During the January 31, 2020 meeting, Rivera informed Plaintiff that he would be  placed in Interim Reporting for 60 days, or until March 31, 2020 because of the alleged failure of the Plaintiff to meet the critical tasks in the January 3, 2021 performance appraisal.

33.     On February 6, 2020, Rivera sent Plaintiff a Memorandum of Counselling citing Plaintiff for allegedly displaying unprofessional behavior throughout the January 31, 2020 meeting. Plaintiff submitted a rebuttal to Rivera's Memorandum of Counseling on February 27, 2020.

34.     On February 10, 2020, Plaintiff filed an internal complaint with CHP's EEO department about the retaliatory treatment he received from the management and the discriminatory and preferential treatment that Lambert utilized in handling the hiring process involving Roadman. Unfortunately, the discriminatory and retaliatory against Plaintiff continued.

35.    On February 14, 2020, Plaintiff met with Chief Scott Howland ("Howland") and Commander Kimberly Holder ("Holder") regarding the internal  EEO complaint filed a few days earlier.  Chief Howland stated there was a lot of information contained in his rebuttal and would need another 30 days to review. No further meeting with Howland ever occurred.

36.    On March 9, 2021 Plaintiff filed his claim with the EEOC.

37.    Since Plaintiff reported Mr. Roadman's concerns to Commander Song, referred Mr. Roadman to Human Resources and filed his own EEO complaint, he has been subjected to  ongoing harassment and unwarranted adverse employment actions and disciplinary write ups. Plaintiff's performance was never an issue or in question until he reported and opposed discrimination against Roadman, informed Mr. Roadman of his EEO rights and forwarded his complaint to Commander Song. Plaintiffs prior appraisals and reviews were exemplary.

38.    On January 3, 2020, Plaintiff received a negative performance appraisal which was also used by Rivera as a write up for reporting Roadman's discrimination complaint to Song and not to him or Lambert first. At the time, Rivera was not Plaintiff's supervisor and Ms. Lambert was the subject of the complaint. At no point prior to Plaintiff reporting discrimination complaint of Roadman was he given any counseling, corrective memoranda, memorandum of direction, censurable CHP2 as required by Respondent's progressive disciplinary policy.

39.    On or about January 31, 2020, Plaintiff was written up again and placed on interim reporting for alleged performance issues which were false as written by Mr. Rivera.

40.    On or about February 6, 2020, Plaintiff was given a memorandum of counseling based on how Mr. Rivera falsely perceived Plaintiff's actions during the January 31st meeting.

41.    Shortly thereafter, Plaintiff  filed an internal EEO complaint and the harassing and retaliation continued. Mr. Rivera and Ms. Lambert continue to nit- pick at absolutely everything Plaintiff did  and treated Plaintiff differently than his peer, Jason Strickland, who held the same

1  position as Plaintiff. For ex, Mr. Strickland was privy to the work related information necessary to do

2  the job, while Plaintiff was excluded.

3  42.  After Plaintiff reported the complaint of Roadman and filed his own EEO complaint,

4  Defendants scrutinize his work and attendance in meetings more closely than other similarly situated

5  employees without any justification. In addition, between the time Plaintiff assisted Roadman,

6  reported the complaint of Roadman and filed his own EEO complaints, Plaintiff was subjected to

7  disciplinary action three times in less than 45 days, for infractions that regularly go undisciplined

8  within Defendant CHP.

9

10  43.  Lambert's practice of showing favoritism in hiring decisions and disregarding the

11  merit system rules is a direct violation of CHP's merit base civil service system of the California

12  State Constitution. It is CHP's policy to provide equal employment opportunities for all applicants

13  and employees at all levels including at the hiring and promoting levels without regard to disability,

14  harassment and retaliation amongst other categories protected under state and federal civil rights

15  laws.

16

17  **FIRST CAUSE OF ACTION**

18  **DISABILITY DISCRIMINATION**

19  **In Violation of ADA (42 U.S.C § 12203 et. seq.) and FEHA (Gov Code § 12940(a)**

20  **(Against Defendant CHP)**

21

22  44.  Plaintiff incorporates herein all previously alleged paragraphs 1 through 43 of the

23  Complaint.

24  45.  The ADA prohibits discrimination against an individual "because such individual has

25  opposed any act or practice made unlawful by this chapter or because such individual made a charge,

26  testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

27

28

1   chapter." 42 U.S.C. § 12203(a). *Oliveras-Sifre v. Puerto Rico Dep't of Health* 214 F.3d 23, 26. (1st

2   Cir. 2000)

3       46.     To establish a prima facie case of retaliation under the ADA, a plaintiff must establish

4   that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware

5   of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a

6   causal connection between the protected activity and the adverse employment action." *Sarno v.*

7   *Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir. 1999); [A] plaintiff need not

8   establish that the conduct he opposed was actually a violation of the statute so long as he can establish

9   that he possessed a good faith, reasonable belief that the underlying challenged actions of the

10  employer violated that law." *Id*

11      47.     Under Cal. Gov. Code § 12940, it is unlawful for an employer, because of

12  physical disability, to refuse to hire or employ a person or to refuse to select the person for a training

13  program leading to employment, or to bar or to discharge the person from employment or from a

14  training program leading to employment, or to discriminate against the person in compensation or in

15  terms, conditions, or privileges of employment. § 12940, subd. (a)

16      48.     CHP is, and was at all times material hereto was, an employer within the meaning of

17  the ADA, and as such, is barred from discriminating on the basis of the individual's disability to job

18  application procedures, the hiring, and advancement of employees.

19      49.     When Plaintiff reported and assisted Roadman in his discrimination claim against

20  Lambert, Plaintiff was engaging in protected activity and asserting his rights under ADA and FEHA,

21  in that CHP cannot discriminate against a person with a disability or because of their disability. .

22      50.     Following Plaintiff's reporting of Roadman's complaint to Commander Song and HR,

23  Plaintiff suffered retaliation in the form of multiple adverse employment actions such as write-ups

24  and memorandums; he was given a poor performance appraisal which was not based on the CHP

guidelines; he was placed on interim reporting for an extended period of time which prevented him from applying to other positions; his merit increase was denied because of the baseless retaliatory accusations from Lambert and Rivera.

51.     Plaintiff's involvement in protective activity was the motivating factor for CHP's adverse employment actions towards Plaintiff. Plaintiff had not received write-ups and memorandums from Lambert and Rivera until after Plaintiff reported Roadman's allegations against Lambert to Commander Song and the HR. Rivera's negative performance appraisal on Plaintiff was not based on Plaintiff's overall performance but improperly grounded on Plaintiff's conduct of directly reporting Roadman's grievance to Commander Song. He was placed in interim reporting for several times and was denied merit increase by Lambert and Rivera who both expressed their retaliatory intent against him, under the guise of " failure to follow the chain of command..

52.     As a direct and proximate result of Defendants' actions as alleged herein, CHP has breached its duties imposed on all employers as established by statute.

53.     As a direct and proximate result of the CHP employees' disability discrimination, Plaintiff has suffered lost income and salary increases, and other employment, in an amount to be proven at trial.

54.     As a further proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional pain, humiliation, mental anguish, and emotional distress.

55.     The conduct of CHP alleged above was deliberate, willful and malicious. Further, the actions taken against Plaintiff were carried out with reckless disregard to the truth and the rights of Plaintiff, and were despicable actions taken without privilege or justification.

//

//

//

## SECOND CAUSE OF ACTION

## VIOLATION OF THE WHISTLEBLOWER PROTECTION ACT

### (Cal. Lab. Code§ 1102.5 et seq.)

### (Against Defendant CHP)

56. Plaintiff incorporates all previously alleged paragraphs 1 through 55 of the Complaint.

57. Cal. Labor Code § 1102.5 prohibits employers from retaliating against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

58. Furthermore, according to Cal. Lab. Code § 1102.5(b), an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

59.     To establish a prima facie case of retaliation under California whistle-blower statutes, it must be shown that the plaintiff engaged in protected activity and was subjected by the employer to adverse employment action, and that there is a causal link between the two. *McVeigh v Recology San Francisco* 213 CA 4th 443, 455 (2013)

60.     Plaintiff engaged in a protective activity when he reported Roadman's complaint against Lambert to Commander Song and the HR, and complained about Lamberts violation of civil service system rules protected by California Constitution.

61.     Commander Song is a person with authority within the meaning of Cal. Lab. Code § 1102.5(b)

62.     Plaintiff complained   that Lambert's hiring practices are not only improper and unethical but are also in direct violation of laws prohibiting discrimination by reason of disability such as the ADA and FEHA.

63.     Plaintiff also contends   that Lambert's hiring practices are in breach of CHP's merit base civil service system of the California State Constitution.

64.     Defendant also violated its  policy to provide equal employment opportunities for all employees at all levels including at the hiring and promoting levels without regard to disability.

65.     Plaintiff in good faith reasonably believed that Roadman's complaint against Lambert merited an investigation.

66.     Plaintiff immediately referred the complaint to HR and notified Commander Song in order to investigate  Roadman's allegations.

67.     Plaintiff suffered adverse employment action when he reported  Lambert's  unlawful discriminatory and preferential treatment conduct, including but not limited to,  multiple write-ups and memorandums, negative performance appraisal, extended interim reporting which prevented Plaintiff from applying for a promotion and denial of timely merit increase.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA WHISTLEBLOWER PROTECTION ACT (WPA)

### (Cal. Gov. Code § 8547 et seq.)

### (Against Defendant CHP)

68.     Plaintiff incorporates all previously alleged paragraphs 1 through 67 of the Complaint.

69.     Under the California Whistleblower Protection Act (Cal. Gov. Code, § 8547 et seq.) a state employee has a right of action against any person who retaliates against him or her for having made a "protected disclosure." The statute prohibits a "person" from intentionally engaging in acts of reprisal, retaliation, threats, coercion, or similar acts against the employee (Cal. Gov. Code, § 8547.8(c)). Furthermore, Cal Gov. Code § 8547 et seq. protects state employees who report: 1.) Violations of law, regulations, executive or court orders; 2.) any condition that may significantly threaten the health or safety of employees or the public; and 3.) Governmental activity that is economically wasteful or involves gross misconduct, incompetency, or inefficiency.

70.     Plaintiff made a protected disclosure in good faith when he notified  Commander Song as directed by CHP policy and referred Roadman to HR in order to have an investigation Roadman's allegations and when he disclosed Lambert's improper hiring practices.

71.     After making said protected disclosure, Plaintiff was subjected to intentional acts of reprisal, retaliation, threats, coercion, or similar acts in violation of Gov Code 8547.

72.     Plaintiff reasonably believed  that Roadman's allegations concerning Lambert's conduct in handling the hiring process in which Roadman applied for was discriminatory as she did not offer the position to Roadman. He reasonably believed  that Roadman was the most qualified for the position but was rejected because of his physical disability. Lambert selected someone else who is not suffering from any disability.

//

73.     Following Plaintiff's reporting of potential discrimination by Lambert to Commander Song and the HR, Plaintiff was ridiculed and issued adverse employment actions under the guise of for breaking the chain of command by Lambert and Rivera; he was subjected to multiple write-ups and memorandums; he received a negative performance appraisal; his interim reporting was extended for a long period of time; he was prevented from applying for a promotion; and he was denied merit increase.

### FOURTH CAUSE OF ACTION

### HARASSMENT

### Cal Gov. Code §12940(j)

### (Against Defendant CHP)

74.     Plaintiff incorporates herein all previously alleged paragraphs 1 through 73 the Complaint.

75.     The FEHA prohibits harassment based on the employees' protected characteristics including, but not limited to, their mental disability and physical disability. Cal Gov. Code §12940(j). Employers are liable for the harassment of their supervisors. *Id* (j)(1).

76.     Defendant subjected Plaintiff to continuous, pervasive, and severe harassment and thereby created a hostile work environment as detailed herein.

77.     The hostile work environment, created by the CHP managers and supervisors, were severe and pervasive based on the nature of the harassment, including egregious statements made by numerous employees expressing animus towards Plaintiff.

78.     Lambert and Rivera subjected Plaintiff to harassment when he reported Roadman's allegations against Lambert to Commander Song. Plaintiff was issued several write-ups and memorandums in a span of a couple weeks  from the time that he reported Lambert's misconduct to Commander Song. Plaintiff was given a poor performance appraisal primarily because he failed to

follow the chain of command in reporting the Roadman complaint. Lambert and Rivera intentionally gave Plaintiff last minute assignments without enough information and short deadlines and intentionally kept Plaintiff out of discussions pertaining to his team and the IT department.

79.    Plaintiff considered the aforementioned conduct to be discriminatory, retaliatory and harassment in nature, and as a result reported said conduct, both verbally and in writing to numerous management level employees and departments including but not limited to Rivera, Lambert, Commander Song, Commander Holder, Chief Howland, and CHP's internal EEO department.

80.    As a result of the continuous, pervasive, and severe harassment described above, Plaintiff suffered damages, including economic losses, and emotional distress, in an amount to be determined at trial.

81.    Because Commander Holder, Lambert and Rivera are managers/supervisors within the meaning of the FEHA, CHP is liable for their harassing conduct.

## FIFTH CAUSE OF ACTION

## RETALIATION

### (Cal. Gov. Code § 12940(h))

### (Against Defendant CHP)

82.    Plaintiff incorporates all previously alleged paragraphs 1 through 81 of the Complaint.

83.    California law guarantees each employee's right to a workplace free from unlawful retaliation because the employee opposed discriminatory or harassing practices that are unlawful under the FEHA. Employers are liable for the retaliatory conduct of supervisors. Cal. Gov. Code § 12940(h).

84.    The elements of a claim for retaliation in violation of section 12940, subdivision (h), are: (1) the employee's engagement in a protected activity, i.e., "oppos[ing] any practices forbidden under this part"; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal

link between the retaliatory animus and the adverse action; (5) damages; and (6) causation. *Mamou v.*

*Trendwest Resorts, Inc.* 165 Cal.App.4th 686, 713 (2008)

85.     After Plaintiff reported Roadman's discrimination complaint against Lambert  to HR and Commander Song, Lambert and Rivera retaliated by immediately verbally reprimanding him for not following the chain of command; he was excluded from team and management communications, he was given a negative Performance Appraisal, placed on Interim Reporting, denied a timely Merit Salary Increase and issued multiple disciplinary actions. Plaintiff,  had previously  received good performance reviews, was not aware of any performance concerns until after he bypassed Lambert with Roadman's complaint against her and reported Roadman's complaint in a manner consistent with CHP regulations.

86.     After Plaintiff filed his discrimination complaint to the internal EEO, CHP, instead of finding a remedy for the discrimination and retaliation, Commander Song further retaliated by denying Plaintiff's request to report to a different supervisor and refused to reverse or modify Plaintiff's performance evaluation despite overwhelming evidence of bias stated in Plaintiff's rebuttal. Plaintiff's allegations of retaliation and harassment were contained in his rebuttals and were never investigated. CHP's failures, actions and inactions as described herein amounted to adoption and ratification of the retaliatory conduct, herein described, to which Plaintiff was subjected to on a daily and ongoing basis.

87.     As a result of CHP's conduct, Plaintiff has suffered damages, including economic losses, and emotional distress, in an amount to be determined at trial.

88.     CHP's actions were willful, malicious, egregious, and intentional, and injured the Plaintiff, with a conscious disregard of Plaintiff's rights. Defendant's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of his rights.

//

//

## SIXTH CAUSE OF ACTION

**FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

**(Cal. Gov. Code §12940(k))**

**(Against Defendant CHP)**

89.     Plaintiff incorporates herein all previously alleged paragraphs 1 through 88 of the Complaint.

90.     Under the law, the employer's duty to prevent harassment and discrimination is affirmative and mandatory.  Retaliation is a form of discrimination actionable under Government Code section, 12940, subdivision (k). See *Taylor v. City of Los Angeles Dept. of Water & Power,* 144 Cal.App.4th 1216, 1240 (2006). Cal. Gov. Code § 12940, subdivision (h) and corresponding regulations of the California Fair Employment and Housing Commission, prohibits retaliation against a person in terms~ conditions or privileges of employment on the basis of engagement in protected activity.

91.     The essential elements of failure to prevent discrimination, harassment or retaliation are: 1) plaintiff was subjected to discrimination, harassment, or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm. See *Leland v. City & County of San Francisco,* 576 F.Supp.2d 1079, 1103 (N.D.Cal. 2008) citing California Civil Jury Instructions (BAJI) 12.11.

92.     Plaintiff engaged in protected activity when he reported Roadman's discrimination complaint against Lambert to Commander Song and the Human Resources. Plaintiff also filed complaints about the mistreatment and violation of his civil rights. In violation of its obligations, CHP failed to investigate Plaintiff's complaints.

93.     CHP failed to take all reasonable steps to prevent harassment, discrimination, and discrimination that it knew was occurring based upon protected activity and instead permitted its agents and assigns to engage in retaliation for making complaints and participating in investigations.

94.     After Plaintiff reported Roadman's discrimination complaint against Lambert  to HR and Commander Song, Lambert and Rivera retaliated by immediately verbally reprimanding him for not following the chain of command; he was excluded from team and management communications, he was given a negative Performance Appraisal, placed on Interim Reporting, denied a timely Merit Salary Increase and issued multiple disciplinary actions. Plaintiff, had previously  received good performance reviews and was not aware of any performance concerns until after he bypassed Lambert with Roadman's complaint against her and reported Roadman's complaint in a manner consistent with CHP regulations. ,.

95.     After Plaintiff filed his discrimination complaint to the internal EEO, CHP, instead of finding a remedy for the discrimination and retaliation, Commander Song permitted and participated in further retaliation  by denying Plaintiff's request to report to a different supervisor and refused to reverse or modify Plaintiff's performance evaluation despite  overwhelming evidence of bias stated in Plaintiff's rebuttal. Commander Holder failed to take steps to prevent the harassing and retaliatory conduct she was clearly aware was occurring.

96.     As a direct result of defendant CHP's failure to take all reasonable steps to prevent these unlawful employment practices, Plaintiff was subjected to unlawful discrimination, harassment and retaliation by CHP's commanders, managers, and supervisors, and suffered economic injuries, including but not limited to, lost wages and compensation, in an amount to be proven at trial.

97.     As a direct result of CHP's failure to take all reasonable steps to prevent these unlawful employment practices, Plaintiff was subjected to unlawful discrimination, harassment and retaliation by CHP's commanders and supervisors,  and suffered emotional distress, including but not limited to

1  emotional pain suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven

2  at trial.

3

4  ## **DEMAND FOR JURY TRIAL**

5  Plaintiff demands a trial by jury of all issues so triable in this action. Plaintiff requests a jury

6  trial on all questions of fact raised by this Complaint.

7

8  ## **PRAYER FOR RELIEF**

9  WHEREFORE, Plaintiff respectfully requests that this Court:

10  1.  For general and compensatory damages according to proof.

11  2.  For penalties pursuant to the ADA (42 U.S.C § 12203 et. seq)  and FEHA (Government

12  Code § 12940 et seq.).

13  3.  For attorney fees and costs.

14  4.  Other relief as may be deemed proper by the Court.

15

16  Date:   July 29, 2021                              LAW OFFICES OF DENISE EATON-MAY

17

18                                                             By:  Denise Eaton May

19                                                                    DENISE EATON-MAY
                                                                      Attorneys for Plaintiff
20                                                                    ADRIAN ROMERO

21

22

23

24

25

26

27

28

FILED/ENDORSED
CIVIL DROP BOX

2021 JUL 30  PM 2: 21

GORDON SCHABER COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

EXHIBIT B

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| DENISE EATON-MAY, ESQ. (116780)<br>LAW OFFICES OF DENISE EATON-MAY, P.C.<br>1290 B STREET, SUITE 316, HAYWARD, CA 94541 | |

TELEPHONE NO.: (510) 888-1345   FAX NO. (Optional): (510) 315-3015
ATTORNEY FOR (Name): Adrian Romero, Jr.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SACRAMENTO, 95814
BRANCH NAME: GODON D. SCHABER COUNTY COURTHOUSE

CASE NAME:
ADRIAN ROMERO JR V CALIFORNIA HIGHWAY PATROL

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 6
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: JULY 29, 2021
DENISE EATON-MAY, ESQ.
_____ (TYPE OR PRINT NAME)   ► *Denise Eaton May* (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                **CIVIL CASE COVER SHEET**                                    Page 2 of 2

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, a state law enforcement agency, organized as part of the California State Transportation Agency ("CALSTA")

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ADRIAN ROMERO JR.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SUPERIOR COURT OF SACRAMENTO
Gordon D. Schaber County Courthouse, 720 9th Street, SACRAMENTO, CA 95814

CASE NUMBER: *(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Denise Eaton-May, Esq. 1290 B Street, Suite 316, Hayward, CA 94541, 510.888.1345

DATE:
*(Fecha)* AUG - 4 2021

Clerk, by
*(Secretario)* M. WHITAKER

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* State of California, Calif. Highway Patrol

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* State law enforcement agency, part of the CALSTA
4. ☐ by personal delivery on *(date)*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov



**SUPERIOR COURT OF CALIFORNIA**

**County of Sacramento**
720 Ninth Street, Room 102
Sacramento, CA 95814-1311

For Court Use Only

PETITIONER/PLAINTIFF:  Adrian Flores

RESPONDENT/DEFENDANT:  California Highway Patrol and Does 1-20

**ORDER RE: DELAY IN SCHEDULING**
**INITIAL CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
34-2021-00305203

The Court finds good cause to delay the scheduling of the Initial Case Management Conference for this case given the COVID-19 pandemic and its impact on court-wide operations. Among the affected operations is the Court's Case Management Program (CMP). The Court's CMP calendars have been and remain suspended until further notice. After the CMP Departments resume operations, the Court will schedule the Initial Case Management Conference in this case and issue a Notice of Case Management Conference and Order to Appear.

The deadline for filing and service of the Case Management Conference Statements will be based upon the date for the Initial Case Management Conference once it has been scheduled.

Parties shall continue to accomplish service of all parties named in the action.

Parties shall continue to ensure that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered.

Plaintiff shall serve a copy of this order on any party to the complaint. The cross-complainant shall have the same obligation with respect to the cross-complaint

Dated: 7/30/2021

RICHARD K. SUEYOSHI

_____
Richard K. Sueyoshi, Judge of the Superior Court

1  DENISE EATON-MAY, ESQ. (SBN 116780)
   LAW OFFICES OF DENISE EATON-MAY, PC
2  1290 B Street, Suite 316
   Hayward CA 94541
3  Tel.: 510.888.1345
   Fax: 510.315.3015
4  Email: denise.may@eaton-maylaw.com
5
6  Attorney for Plaintiff
   ADRIAN ROMERO, JR.
7
8                SUPERIOR COURT FOR THE STATE OF CALIFORNIA
9                          COUNTY OF SACRAMENTO
10
11
12  ADRIAN ROMERO, JR.,              CASE NO.:  34-2021-00305203
    Plaintiff,
13                                   FIRST AMENDED COMPLAINT FOR
14                                   DAMAGES
         vs.
15                                   1.   Discrimination -Violation of Americans
                                          With Disabilities Act (ADA) (42 U.S.C.
16  CALIFORNIA HIGHWAY PATROL,            § 12203 *et seq.*)
    AND DOES 1 THROUGH 20, inclusive 2.   Whistleblower Retaliation -- (Cal. Labor
17                                        Code § 1102.5)
18  Defendants.                       3.   Violation of California Whistleblower
                                          Protection Act -- (WPA) (Cal Gov. Code
19                                        § 8547 et seq.)
                                     4.   Harassment - Violation of Fair
20                                        Employment and Housing Act (FEHA)
                                          (Cal. Gov. Code § 12940(j))
21                                   5.   Retaliation -- Violation of FEHA (Cal.
                                          Gov. Code § 12940(h))
22                                   6.   Failure To Prevent Discrimination,
                                          Harassment And Retaliation - Violation
23                                        of FEHA (Cal. Gov. Code
                                          § 12940(k))
24
25                                   DEMAND FOR JURY TRIAL
26
27
28

                                    1

## INTRODUCTION

1.     Plaintiff Adrian Romero, Jr. ("Plaintiff"), by and through undersigned counsel, files this civil action Complaint and Jury Demand ("Complaint") against Defendant California Highway Patrol (hereinafter referred to as "CHP" and/or "Defendant) and Does 1 through 20. Plaintiff brings this action against his employer, CHP, for discrimination, harassment and retaliation based on Plaintiff engaging in protective activity in violation of state and federal laws.

2.     The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## NATURE OF COMPLAINT

3.     This is a civil action in which Plaintiff, has been retaliated against at his place of employment as an Information Technology Supervisor I with the CHP, as a result of engaging in protective activity when he reported a discrimination claim and exposing improper hiring practices by his direct Manager, Corleen Lambert.

4.     Immediately after reporting said conduct, Plaintiff received a series of adverse employment actions affecting his terms and conditions of employment, ranging from various disciplinary actions including, but not limited to a negative Performance Appraisal and denial of timely Merit Salary Increase. Defendant also wrongfully placed Plaintiff on Interim Reporting, wrongfully issued a Memorandum of Counseling, wrongfully issued Plaintiff a Memorandum of Direction, and engaged in continuous, severe, and pervasive harassing behavior causing Plaintiff damages.

//

//

//

## THE PARTIES

5.      Plaintiff, at all relevant times, is a resident in the County of Sacramento, State of California. At all times material to this action, Plaintiff was an employee of Defendant, the California Highway Patrol and remains an employee of Defendant.

6.      Plaintiff is informed and believes and alleges thereon that Defendant CHP is, at all times relevant hereto, has been and is a state law enforcement agency, organized as part of the California State Transportation Agency ("CALSTA") maintaining a place of business at 601 N. 7th Street, Bldg. C Sacramento, CA 95811.

7.      At all times relevant hereto, Defendant CHP was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant CHP.

8.      The true names and capacities of Defendants named as DOES 1 through 20, inclusive, are presently unknown to Plaintiff. Therefore, Plaintiff sues said Defendants pursuant to Section 474 of the Code of Civil Procedure. Plaintiff will amend this complaint to set forth the true names and capacities of said Defendants, when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

9.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant named herein, was the agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and/or employment.

//

## JURISDICTION AND VENUE

10.     This is a complaint for damages for unlawful discrimination, harassment, and retaliation in employment, brought pursuant to the Fair Housing and Employment Act ("FEHA") (Gov. Code § 12940 *et seq.*) and Title 1 of the Americans with Disabilities Act of 1990, as amended ("ADA") (42 U.S.C. § 12203 *et seq.*). This Court has jurisdiction over this matter in that the Plaintiff lives in Sacramento County and the Defendant's primary office is located in Sacramento County.

11.     Venue is proper pursuant to Cal. Civ. Proc. Code § 394(a). The events giving rise to the claims made herein occurred in Sacramento County, and Defendant, CHP has its principal place of business/headquarter in Sacramento County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     On or about March 9, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") which was automatically dual filed with the California Department of Fair Employment and Housing ("DFEH"). On March 18, 2020, Plaintiff received a Notice of Right to Sue from the DFEH which allows Plaintiff to file a lawsuit within one year from the date of the DFEH's notice of Right to Sue or within 90 days from receipt of the federal right to sue letter, whichever is later. The EEOC by and through the U.S. Department of Justice ("DOJ") issued a Notice of Right to Sue on April 30, 2021, and the same was received through electronic message on the same date. Accordingly, Plaintiff has exhausted his administrative remedies as to his discrimination, harassment and retaliation claims. On or about October 14, 2020, Plaintiff filed a claim with the State Personnel Board. In December 2020, the State Personnel Board authorized Plaintiff to pursue civil action under Government Code § 8547.

## PROCEDURAL BACKGROUND

13.     On or about March 9, 2020, Plaintiff filed a formal complaint with the EEOC. On or about March 18, 2020, EEOC served Defendant CHP with the Charge of Discrimination. Defendant

CHP had 30 days to respond or request an extension, but Defendant took no action. EEOC reached out to Defendant and offered a verbal extension in which they were given until September 4, 2020, to respond, however Defendant again failed to take any action. On September 16, 2020, EEOC submitted a Letter of Determination inviting both Plaintiff and Defendant to engage in conciliation in an effort to reach a resolution. On September 21, 2020, EEOC provided a proposed Conciliation Agreement between EEOC, Defendant, and Plaintiff, however Defendant indicated that they were unwilling to engage in conciliation. On September 24, 2020, EEOC issued a letter stating efforts to conciliate this matter were unsuccessful and the case was now being referred to the U.S. Department of Justice for its review. On or about April 30, 2021, the Notice of Right To Sue was issued via email.

## **FACTUAL BACKGROUND**

14.     Plaintiff commenced employment with the CHP on July 25, 2018. He started as an Information Technology Associate under the supervision of Stanley Meeks, Supervisor I and Colleen Lambert ("Lambert"), Supervisor II. During his tenure as an Associate, Plaintiff received positive feedback regarding his performance. Plaintiff applied for the Information Technology Supervisor I position and was offered the job.

15.     Plaintiff assumed the Information Technology Supervisor I position in May 2019. The Information Technology Supervisor I position had a one-year probationary period, from May 1, 2019 to April 30, 2020.

16.     On September 5, 2019, Plaintiff received his first performance review as an Information Technology Supervisor I. The performance appraisal was positive and stated that Plaintiff's performance was either standard or outstanding in all ten categories.

17.     On November 18, 2019, Plaintiff received a concerning email from Andy Roadman ("Roadman"), one of Plaintiff's direct reports. Roadman is an employee of CHP with a disability. Roadman informed Plaintiff that he did not get the lateral position that he applied to and expressed

his dissatisfaction with the way Lambert handled the hiring process. In addition, he indicated that he believed that Lambert improperly showed preferential treatment or favoritism toward another applicant which Lambert knew personally, in violation of the civil service/merit system. Based on Roadman's email, Plaintiff in good faith, reasonably believed that Roadman's disability could be a factor for why Lambert did not select Roadman for the position.

18.    Due to the nature of Roadman's concerns, Plaintiff notified their Commander, Jay Song (as dictated by Defendant's policy) and referred Roadman to Human Resources (HR), both of whom Plaintiff believed were better suited to address Roadman's concerns. Plaintiff reasonably believed that Roadman's concerns violated EEO and/or ADA laws, being that Roadman is disabled, physically confined to a wheelchair, and was overlooked for a position he was well qualified for and was in fact already performing some of the job duties.

19.    According to CHP policy, HPM 10.12, Ch 6(12)(a)(1), "If any employee believes they have been discriminated against and brings it to the attention of a supervisor . . . the supervisor . . . shall notify the affected commander", Defendant's policy further states, "The supervisor . . .is legally obligated to ensure the work environment is free of discrimination.

20.    On the next day, November 19, 2019, Plaintiff was called to the office of Lambert. Lambert accused him of violating the CHP rules. Lambert told Plaintiff that he broke the chain of command when he did not inform Lambert regarding Roadman's complaint, despite Plaintiff having complied with CHP reporting policy.

21.    On November 21, 2019, Plaintiff was verbally chastised by his then supervisor, Alfredo Rivera ("Rivera") for allegedly violating the chain of command when Plaintiff notified Commander Song without informing Lambert of Roadman's grievance and when Plaintiff referred Roadman to HR.

22.     After Plaintiff reported to Commander Song the disparate treatment complaint of Roadman, Plaintiff immediately observed that the CHP management's treatment and attitude toward him changed. Prior to reporting Roadman's complaint, he communicated with management on a regular basis and attended management meetings. After November 19, 2019, he was kept out of loop of communication on work-related matters by Rivera and Lambert.  In addition,  Rivera began to bypass Plaintiff and directly communicated with Plaintiff's staff on work-related matters, thereby interfering with Plaintiff's ability to properly manage his team.

23.     Plaintiff also began to experience a series adverse employment actions. On January 3, 2020, Rivera gave Plaintiff a negative performance appraisal for the period covering September 26, 2019 to January 2, 2020. Plaintiff was not apprised before the performance appraisal of any concerns with his performance. In addition, the performance appraisal was not focused on the quality of Plaintiff's overall performance and effectiveness of his work. Instead, Rivera based his appraisal on four specific instances, one of which was that Plaintiff failed to take Roadman's complaint through the chain of command.

24.     The performance appraisal cites that Plaintiff needs improvement on 5 of the 10 areas, namely, Critical Tasks, Leadership, Judgment and Problem Solving, and Interpersonal Skills, and Administrative and Specialized Assignments. What was supposed to be a performance appraisal became a write up as it alleged that Plaintiff had engaged in misconduct and was all of a sudden deficient in 5 of the 10 areas.  The performance appraisal alleged that: (1) Plaintiff was late on the October 23, 2019 weekly meeting and acted irate with Rivera when Rivera approached him; (2) Plaintiff failed to take Roadman's complaint through the chain of command; (3) Plaintiff made negative comments about his team and portrayed a negative attitude; and (4) Plaintiff was non-responsive to requests and non-cooperative to administrative requests. Upon reading the performance appraisal, and meeting with Rivera on January 3, 2020, Plaintiff told Rivera that he felt he was "being

targeted" and that "this was a personal attack" on him. Rivera directly responded, "Yes, this is personal."

25.     On January 10, 2020, Plaintiff submitted a rebuttal to the January 3, 2020 negative performance appraisal stating among other things, that Rivera failed to follow proper protocol and procedures with regard to the Interim Reporting and that Rivera did not follow the performance review guidelines. Plaintiff also reported in his rebuttal the improper hiring practices of Lambert in the department and misconduct/violation of policy by Rivera.  Plaintiff requested that his appraisal be modified or removed to accurately reflect his performance and through his rebuttal, effectively refuted the allegations in the false and negative performance appraisal. Moreover, the inaccurate poor performance assertions were clearly motivated by retaliatory animus for Plaintiff not reporting the complaint against Lambert to Lambert rather than Commander Song. In addition, Plaintiff pointed out in his rebuttal how Rivera intentionally deviated from the Performance Review Guidelines when Rivera issued a negative performance review on Plaintiff.

26.     On January 13, 2020, Plaintiff met with Commander Song who was in possession of Plaintiff's rebuttal but stated he had not yet reviewed it. Without conducting any investigation into Plaintiff's claims, Commander Song denied Plaintiff's request for removal or modification of the negative retaliatory performance appraisal. Plaintiff informed Commander Song he was going to file an EEO complaint, Commander Song flat out told Plaintiff, "You don't have a case".

27.     On January 22, 2020, Plaintiff is informed and believes that Commander Song met with CHP's EEO Counselor Deanne Silvera and per her notes, Commander Song made it seem as if Plaintiff "needed to go", as in "not pass probation".

28.     On January 31, 2020, Plaintiff met with Rivera and Isaac Ryland to discuss his performance appraisal. Plaintiff requested his EEO Counselor, Deanne Silvera be present, but was denied that right. Rivera spoke to Plaintiff in a demeaning, harassing and disrespectful manner thereby

creating a work environment wrought with hostility causing Plaintiff emotional distress. Rivera informed Plaintiff that he was being placed on Interim Reporting because of the alleged failure of meeting the critical tasks noted in his January 3, 2020 performance appraisal. However, Rivera failed to follow CHP's "Progressive Discipline Review Guidelines" by not following the proper disciplinary steps as described therein before placing Plaintiff on Interim Reporting. At no given point did Rivera issue Plaintiff a Memorandum of Counseling, Corrective Memoranda, Memorandum of Direction; Censurable CHP2, Incident Report as required by the Highway Patrol Manual ("HPM") 10.10, Ch.5 3(c)(1).

29.     CHP's "Progressive Discipline Review Guidelines" require that certain disciplinary steps occur before placing an employee on Interim Reporting. Highway Patrol Manual ("HPM") 10.10, Ch.5 3(c)(1) requires that one receive a Memorandum of Counseling, Corrective Memoranda, Memoranda of Direction, Censurable CHP2 before one is placed on Interim Reporting. Adherence to this process was confirmed by Commander Song at Defendant's Weekly Managers meeting on October 7, 2019.  Commander Song indicated that proper "Documentation must be made before taking [any disciplinary] action". Additionally, Commander Song stated, "Interim Reporting cannot be the first action. The issue must have previously been documented via a MOC and MOD".

30.     On February 6, 2020, Rivera sent Plaintiff a Memorandum of Counselling citing Plaintiff for allegedly displaying unprofessional behavior throughout the January 31, 2020 meeting. Rivera claimed that Plaintiff was defensive and unprofessional towards him; created a disturbance in the work area and attempted to "bark orders" at him. However, it was Rivera who was unprofessional and downright degrading and demoralizing by describing Plaintiff as an animal by stating Plaintiff was "barking orders". Rivera disliked and refused to go over the Interim Reporting with Plaintiff as Plaintiff was only trying to ascertain why he was placed on Interim Reporting in the first place. Rivera was so bothered by Plaintiffs request that he aggressively pulled his chair up against the table, leaned

over, and with a stern look and harsh tone told Plaintiff, "I wrote it, I know what's in it, you need to read it."

31. Plaintiff submitted a rebuttal to Rivera's Memorandum of Counseling on or about February 27, 2020. Plaintiff also in his rebuttal requested a review of the decision to place him on Interim Reporting.

32. On February 10, 2020, Plaintiff filed an internal complaint with CHP's EEO department about the retaliatory treatment he received from Defendant and the discriminatory and preferential treatment that Lambert utilized in handling the hiring process involving Roadman. Unfortunately, the discriminatory and retaliatory behavior against Plaintiff continued. Rivera and Lambert continue to nitpick at absolutely everything Plaintiff did and treated Plaintiff differently than his peer, Jason Strickland, who held the same position as Plaintiff. For example, Mr. Strickland was privy to the work related information necessary to do the job, while Plaintiff was excluded.

33. On February 14, 2020, Plaintiff met with Chief Scott Howland ("Howland") and Commander Kimberly Holder ("Holder") regarding the internal EEO complaint filed a few days earlier. Chief Howland stated there was a lot of information contained in his rebuttal and would need another 30 days to review. No further meeting with Chief Howland ever occurred. Instead, it was Commander Holder and Rivera who met with Plaintiff and handed him modified versions of his Performance Appraisal, Interim Reporting, and Memorandum of Counseling. The modifications made were nothing more than minor edits and nothing of substance which were pretextual for the purpose of removing the original write-ups so Defendant would then have the ability to remove all of *Plaintiff's rebuttals* from his personnel file. Holder stated that it was to Plaintiff's "benefit as it is only fair to him for those documents to be removed". She further stated that it is CHP's policy to remove any rebuttals or related documents when a "corrected document" is replaced. Defendant modified the write-ups purposely keeping the original dates of those documents making it seem as if the originals

never existed. Plaintiff specifically requested Defendant to leave all rebuttals in his personnel file and to make a notation on the corrected write-ups by adding an amended memorandum reflecting modifications being made by CHP and to specify the correct date of such modifications to avoid any ambiguity. However, Defendant proceeded to remove Plaintiff's rebuttals and did not correct nor clarify the dates of the modified version of documents.

34.     Plaintiff's performance was never an issue or in question until he reported and opposed discrimination against Roadman, informed Roadman of his EEO rights and forwarded his complaint to Commander Song. Plaintiffs prior appraisals and reviews were exemplary. Since Plaintiff reported Roadman's concerns to Commander Song, referred Roadman to Human Resources and filed his own EEO complaint, he has been subjected to ongoing harassment and unwarranted adverse employment actions and received disciplinary write ups  three times in less than 45 days for infractions that regularly go undisciplined within Defendant CHP.

35.     Lambert's practice of showing favoritism in hiring decisions and disregarding the merit system rules is a direct violation of CHP's merit base civil service system of the California State Constitution. It is CHP's policy to provide equal employment opportunities for all applicants and employees at all levels including at the hiring and promoting levels without regard to disability.

36.     On March 9, 2020, Plaintiff filed his claim with the EEOC.

## FIRST CAUSE OF ACTION

## DISABILITY DISCRIMINATION

### In Violation of ADA (42 U.S.C. § 12203 et. seq.)

### (Against Defendant CHP)

37.     Plaintiff incorporates herein all previously alleged paragraphs 1 through 36 of the Complaint.

38. The ADA prohibits discrimination against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). *Oliveras-Sifre v. Puerto Rico Dep't of Health* 214 F.3d 23, 26 (1st Cir. 2000)

39. To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir. 1999); [A] plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." *Id*

40. CHP is, and was at all times material hereto, an employer within the meaning of the ADA, and as such, is barred from discriminating on the basis of the individual's disability to job application procedures, the hiring, and advancement of employees.

41. When Plaintiff reported and assisted Roadman in his discrimination claim against Lambert, Plaintiff was engaging in protected activity and asserting his rights under ADA and FEHA, in that CHP cannot discriminate against a person with a disability or because of their disability.

42. Following Plaintiff's reporting of Roadman's complaint to Commander Song and referring Roadman to Human Resources, Plaintiff suffered retaliation in the form of multiple unwarranted adverse employment actions such as write-ups and memorandums; he was given a poor performance appraisal which was not based on the CHP guidelines; he was placed on interim reporting

for an extended period of time which prevented him from applying to other positions; his merit increase was denied because of the baseless retaliatory accusations from Lambert and Rivera.

43.     Plaintiff's involvement in protective activity was the motivating factor for CHP's adverse employment actions towards Plaintiff. Plaintiff had not received write-ups and memorandums from Lambert and Rivera until after Plaintiff reported Roadman's allegations against Lambert to Commander Song. Rivera's negative performance appraisal on Plaintiff was not based on Plaintiff's overall performance but improperly grounded on Plaintiff's conduct of directly reporting Roadman's grievance to Commander Song. Plaintiff's reporting of Roadman's complaint was consistent with CHP policy. Notwithstanding, Plaintiff was placed in interim reporting several times and was denied merit salary increase by Lambert and Rivera who both expressed their retaliatory intent against him, under the guise of "failure to follow the chain of command".

44.     As a direct and proximate result of Defendants' actions as alleged herein, CHP has breached its duties imposed on all employers as established by statute.

45.     As a direct and proximate result of the CHP's discrimination, Plaintiff has suffered lost income and salary increases, and other employment opportunities, in an amount to be proven at trial.

46.     As a further proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional pain, humiliation, mental anguish, and distress.

47.     The conduct of CHP alleged above was deliberate, willful and malicious. Further, the actions taken against Plaintiff were carried out with reckless disregard to the truth and the rights of Plaintiff, and were despicable actions taken without privilege or justification.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE WHISTLEBLOWER PROTECTION ACT

### (Cal. Lab. Code § 1102.5 et seq.)

### (Against Defendant CHP)

48.     Plaintiff incorporates all previously alleged paragraphs 1 through 47 of the Complaint.

49.     Cal. Labor Code § 1102.5 prohibits employers from retaliating against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

50.     Furthermore, according to Cal. Lab. Code § 1102.5(b), an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

51.     To establish a prima facie case of retaliation under California whistleblower statutes, it must be shown that the plaintiff engaged in protected activity and was subjected by the employer to adverse employment action, and that there is a causal link between the two. *McVeigh v Recology San Francisco*, (2013). 213 Cal.App.4th 443, 455

52.     Plaintiff engaged in a protective activity when he reported Roadman's complaint against Lambert to Commander Song and referred Roadman to HR and complained about Lambert's violation of civil service system rules protected by California State Constitution.

53.     Commander Song is a person with authority within the meaning of Cal. Lab. Code § 1102.5(b)

54.     Plaintiff reported that Lambert's hiring practices are not only improper and unethical but are also in direct violation of laws prohibiting discrimination by reason of disability such as the ADA and FEHA.

55.     Plaintiff also contends that Lambert's hiring practices are in breach of CHP's merit base civil service system of the California State Constitution.

56.     Defendant also violated its policy to provide equal employment opportunities for all employees at all levels including at the hiring and promoting levels without regard to disability.

57.     Plaintiff in good faith reasonably believed that Roadman's complaint against Lambert merited an investigation.

58.     Plaintiff immediately notified Commander Song in order to investigate Roadman's allegations.

59.     Plaintiff suffered adverse employment action when he reported Lambert's unlawful discriminatory and preferential treatment conduct, including but not limited to, multiple write-ups and memorandums, negative performance appraisal, extended interim reporting which prevented Plaintiff from applying for a promotion and denial of timely merit salary increase.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA WHISTLEBLOWER PROTECTION ACT (WPA)

### (Cal. Gov. Code § 8547 et seq.)

### (Against Defendant CHP)

60.     Plaintiff incorporates all previously alleged paragraphs 1 through 59 of the Complaint.

61.     Under the California Whistleblower Protection Act (Cal. Gov. Code, § 8547 et seq.), a state employee has a right of action against any person who retaliates against him or her for having made a "protected disclosure." The statute prohibits a "person" from intentionally engaging in acts of reprisal, retaliation, threats, coercion, or similar acts against the employee (Cal. Gov. Code, § 8547.8(c)). Furthermore, Cal. Gov. Code § 8547 et seq. protects state employees who report: 1. violations of law, regulations, executive or court orders; 2.) any condition that may significantly threaten the health or safety of employees or the public; and 3.) governmental activity that is economically wasteful or involves gross misconduct, incompetency, or inefficiency.

62.     Plaintiff made a protected disclosure in good faith when he notified Commander Song of Lambert's improper hiring practice in violation of law.

63.     After making said protected disclosure, Plaintiff was subjected to intentional acts of reprisal, retaliation, threats, coercion, or similar acts in violation of Cal. Gov Code § 8547.

64.     Plaintiff reasonably believed that Roadman's allegations concerning Lambert's conduct in handling the hiring process in which Roadman applied for was discriminatory as she did not offer the position to Roadman. Plaintiff reasonably believed that Roadman was the most qualified candidate for the position. Lambert selected an acquaintance who was unqualified for the position.

65.     Following Plaintiff's reporting of violations of the merit system rules by Lambert Plaintiff was ridiculed and issued adverse employment actions by Lambert and Rivera under the pretext of violating the chain of command. Plaintiff was subjected to multiple write-ups and

memorandums; he received a negative performance appraisal; his interim reporting was extended for a long period of time; he was prevented from applying for a promotion; and he was denied his merit salary increase.

## FOURTH CAUSE OF ACTION

### HARASSMENT

### (Cal Gov. Code §12940(j))

### (Against Defendant CHP)

66.     Plaintiff incorporates herein all previously alleged paragraphs 1 through 65 of the Complaint.

67.     The Fair Employment and Housing Act (FEHA) prohibits harassment based on the employees' protected characteristics including, but not limited to, their mental disability and physical disability. Cal. Gov. Code § 12940(j). Employers are liable for the harassment of their supervisors. *Id* (j)(1).

68.     Defendant subjected Plaintiff to continuous, pervasive, and severe harassment and thereby created a hostile work environment as detailed herein.

69.     The hostile work environment, created by the CHP managers and supervisors, were severe and pervasive based on the frequency of the actions, the nature of the harassment, including egregious statements made by Defendant's supervisors expressing animus towards Plaintiff.

70.     Lambert and Rivera subjected Plaintiff to continuous, pervasive and severe harassment when he reported Roadman's allegations against Lambert to Commander Song. In close proximity to Plaintiff's report to Commander Song, Plaintiff was issued several write-ups and memorandums in a span of a couple weeks from the time that he reported Lambert's misconduct to Commander Song. Plaintiff was given a poor performance appraisal allegedly because he failed to follow the chain of

command in reporting Roadman's complaint. Lambert and Rivera intentionally gave Plaintiff last minute assignments without enough information and short deadlines and intentionally kept Plaintiff out of discussions pertaining to his team and the IT department. Rivera would yell and scream at Plaintiff regularly at meetings, speak to him in a disrespectful, demeaning manner and intentionally undermine his ability to manage his staff and assignments.

71.     Plaintiff considered the aforementioned conduct to be discriminatory, retaliatory and harassment in nature, and as a result reported said conduct, both verbally and in writing to numerous management level employees and departments of Defendant including but not limited to Rivera, Lambert, Commander Song, Commander Holder, Chief Howland, and CHP's internal EEO department.

72.     As a result of the continuous, pervasive, and severe harassment described above, Plaintiff suffered damages, including economic losses, and emotional distress, in an amount to be determined at trial.

73.     Because Commander Holder, Lambert and Rivera are managers/supervisors within the meaning of the FEHA, CHP is liable for their harassing conduct.

### FIFTH CAUSE OF ACTION

### RETALIATION

### (Cal. Gov. Code § 12940(h))

### (Against Defendant CHP)

74.     Plaintiff incorporates all previously alleged paragraphs 1 through 73 of the Complaint.

75.     California law guarantees each employee's right to a workplace free from unlawful retaliation because the employee opposed discriminatory or harassing practices that are unlawful under the FEHA. Employers are liable for the retaliatory conduct of supervisors. Cal. Gov. Code § 12940(h).

76.     The elements of a claim for retaliation in violation of section 12940, subdivision (h), are: (1) the employee's engagement in a protected activity, i.e., "oppos[ing] any practices forbidden under this part"; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation. *Mamou v. Trendwest Resorts, Inc.*,165 Cal. App. 4th 686, 713 (2008).

77.     After Plaintiff reported Roadman's discrimination/disparate treatment complaint/concern against Lambert to Commander Song, Lambert and Rivera retaliated by immediately verbally reprimanding him for not following the chain of command; he was excluded from team and management communications, he was given a negative Performance Appraisal, placed on Interim Reporting, denied a timely Merit Salary Increase and issued other disciplinary actions. Plaintiff, had previously received good performance reviews, was not aware of any performance concerns until after he bypassed Lambert with Roadman's complaint against her and reported Roadman's complaint in a manner consistent with CHP regulations.

78.     After Plaintiff filed his discrimination complaint to the internal EEO, CHP, instead of finding a remedy for the discrimination and retaliation, Commander Song further retaliated by denying Plaintiff's request to report to a different supervisor and refused to reverse or modify Plaintiff's performance evaluation despite overwhelming evidence of bias stated in Plaintiff's rebuttal. Plaintiff's allegations of retaliation and harassment were contained in his rebuttals and were never investigated. CHP's failures, actions and inactions as described herein amounted to adoption and ratification of the retaliatory conduct, herein described, to which Plaintiff was subjected to on a daily and ongoing basis.

79.     As a result of CHP's conduct, Plaintiff has suffered damages, including economic losses, and emotional distress, in an amount to be determined at trial.

80.     CHP's actions were willful, malicious, egregious, and intentional, and injured the Plaintiff, with a conscious disregard of Plaintiff's rights. Defendant's actions were willful, malicious,

fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of his rights.

///

### SIXTH CAUSE OF ACTION

**FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

**(Cal. Gov. Code § 12940(k))**

**(Against Defendant CHP)**

81.     Plaintiff incorporates herein all previously alleged paragraphs 1 through 80 of the Complaint.

82.     Under the law, the employer's duty to prevent harassment and discrimination is affirmative and mandatory. Retaliation is a form of discrimination actionable under Government Code section 12940, subdivision (k). See *Taylor v. City of Los Angeles Dept. of Water & Power,* 144 Cal. App. 4th 1216, 1240 (2006). Cal. Gov. Code § 12940, subdivision (h) and corresponding regulations of the California Fair Employment and Housing Commission, prohibits retaliation against a person in terms conditions or privileges of employment on the basis of engagement in protected activity.

83.     The essential elements of failure to prevent discrimination, harassment or retaliation are: 1) plaintiff was subjected to discrimination, harassment, or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm. See *Lelaind v. City & County of San Francisco,* 576 F.Supp.2d 1079, 1103 (N.D. Cal. 2008) citing California Civil Jury Instructions (BAJI) 12.11.

84. Plaintiff engaged in protected activity when he reported Roadman's discrimination complaint against Lambert to Commander Song. Plaintiff also filed complaints about the mistreatment and violation of his civil rights. In violation of its obligations, CHP failed to conduct a prompt and thorough investigation of Plaintiff's complaints.

85. CHP failed to take all reasonable steps to prevent harassment, discrimination, and retaliation that it knew was occurring based upon protected activity and instead permitted its agents to engage in retaliation against Plaintiff for making complaints and participating in investigations.

86. After Plaintiff filed his discrimination complaint to the internal EEO, CHP, instead of finding a remedy for the discrimination and retaliation, Commander Song permitted and participated in further retaliation by denying Plaintiff's request to report to a different supervisor and refused to reverse or modify Plaintiff's performance evaluation despite overwhelming evidence of bias stated in Plaintiff's rebuttal. Commander Holder failed to take steps to prevent the harassing and retaliatory conduct she was clearly aware was occurring.

87. As a direct result of defendant CHP's failure to take all reasonable steps to prevent these unlawful employment practices, Plaintiff was subjected to unlawful discrimination, harassment and retaliation by CHP's commanders, managers, and supervisors, and suffered economic injuries, including but not limited to, lost wages and compensation, in an amount to be proven at trial.

88. As a direct result of CHP's failure to take all reasonable steps to prevent these unlawful employment practices, Plaintiff was subjected to unlawful discrimination, harassment and retaliation by CHP's commanders, managers, and supervisors, and suffered emotional distress, including but not limited to emotional pain and suffering, mental anguish, humiliation, depression and hopelessness, in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable in this action. Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendant as follows:

1. For general and compensatory damages according to proof;

2. For penalties pursuant to the ADA (42 U.S.C. § 12203 *et. seq*);

3. For cost of suit and attorney's fees as allowed by law; and

4. For such other relief as may be deemed proper by the Court.

Date:   September 28, 2021              LAW OFFICES OF DENISE EATON-MAY


                                By: _____
                                    DENISE EATON-MAY
                                    Attorneys for Plaintiff
                                    ADRIAN ROMERO JR.

# CERTIFICATE OF SERVICE

|  | | **Superior Case No.** | 34-2021-00305203 |
|---|---|---|---|
| **Case**<br>**Name:** | **Romero v. CHP** | **Temporary USDC**<br>**ED Case No.** | **2:21-at-01012** |

I hereby certify that on <u>October 25, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1331 AND 1441(B) (FEDERAL QUESTION)**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>October 25, 2021</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Denise Eaton-May, Esq.
Law Offices of Denise Eaton-May, P.C.
1290 B Street, Suite 316
Hayward, CA 94541

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 25, 2021</u>, at Sacramento, California.

| Sondra R. Bushey | */s/ Sondra R. Bushey* |
|---|---|
| Declarant | Signature |

SA2021304925
35601071.docx