1  DENISE EATON-MAY, ESQ. (SBN 116780)
   LAW OFFICES OF DENISE EATON-MAY, PC
2  1290 B Street, Suite 316
   Hayward CA 94541
3  Tel.: 510.888.1345
   Fax: 510.315.3015
4  Email: denise.may@eaton-maylaw.com
   Attorney for Plaintiff ADRIAN ROMERO, JR.
5

6

7

8                **IN THE UNITED STATES DISTRICT COURT**

9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10
   **ADRIAN ROMERO, JR.,**                    **CASE NO.:   2:21-CV-01978-JAM-DB**
11
                              Plaintiff,
12                                             **THIRD AMENDED COMPLAINT FOR**
                                               **DAMAGES**
13      vs.
                                               1.  **Disability Discrimination/Retaliation -**
14                                                 **Violation of Americans With Disabilities**
                                                   **Act (ADA) (42 U.S.C. § 12203(a))**
15  **CALIFORNIA HIGHWAY PATROL,**            2.  **Interference, Coercion And Intimidation -**
                                                   **Violation of ADA (42 U.S.C. § 12203(b))**
16         Defendant.                          3.  **Violation of California Whistleblower**
                                                   **Protection Act – (WPA) (Cal Gov. Code §**
17                                                 **8547 et seq.)**
                                               4.  **Harassment - Violation of Fair**
18                                                 **Employment and Housing Act (FEHA)**
                                                   **(Cal. Gov. Code § 12940(j))**
19                                             5.  **Retaliation – Violation of FEHA (Cal.**
                                                   **Gov. Code § 12940(h))**
20                                             6.  **Failure To Prevent Discrimination,**
                                                   **Harassment And Retaliation - Violation**
21                                                 **of FEHA (Cal. Gov. Code**
                                                   **§ 12940(k))**
22                                             7.  **Failure to Accommodate – Violation of**
                                                   **FEHA (Cal. Gov. Code § 12940(m)**
23                                             8.  **Failure to Engage in Interactive Process –**
                                                   **Violation of FEHA (Cal. Gov. Code §**
24                                                 **12940(n))**
25
26                                             **DEMAND FOR JURY TRIAL**
27
28

                                          1

**INTRODUCTION**

1.      Plaintiff Adrian Romero, Jr. ("Plaintiff"), by and through undersigned counsel, files this Third Amended Complaint and Jury Demand ("Complaint") against Defendant California Highway Patrol (hereinafter referred to as "CHP" and/or "Defendant"). Plaintiff brings this action against his employer, CHP, for unlawful employment practices in violation of state and federal laws.

2.      The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

**NATURE OF COMPLAINT**

3.      This is a civil action in which Plaintiff has been discriminated, harassed and retaliated against at his place of employment as an Information Technology Supervisor I with the CHP, as a result of engaging in protective activity when he reported a discrimination claim and exposed improper hiring practices by his direct Manager, Corleen Lambert. In addition, Plaintiff has suffered retaliation as a result of filing internal EEO claim and EEOC charges.

4.      Immediately after reporting said conduct and filing EEOC charges, Plaintiff received a series of adverse employment actions affecting his terms and conditions of employment, ranging from various disciplinary actions including, but not limited to a negative Performance Appraisal and denial of timely Merit Salary Increase. Defendant also wrongfully placed Plaintiff on Interim Reporting, wrongfully issued a Memorandum of Counseling, wrongfully issued Plaintiff a Memorandum of Direction, and engaged in continuous, severe, and pervasive harassing behavior causing Plaintiff damages.

5.      Defendant also failed to perform its duty to engage in interactive process and to reasonably accommodate Plaintiff for his  medical condition.

**THE PARTIES**

6.      Plaintiff, at all relevant times, is a resident in the County of Sacramento, State of California. At all times material to this action, Plaintiff was an employee of Defendant, CHP, and remains an employee of Defendant.

7.      Plaintiff is informed and believes and alleges thereon that Defendant CHP is, at all

1  times relevant hereto, has been and is a state law enforcement agency, organized as part of the

2  California State Transportation Agency ("CALSTA") maintaining a place of business at 601 N. 7th

3  Street, Bldg. C Sacramento, CA 95811.

4      8.      At all times relevant hereto, Defendant CHP was acting through its agents, servants,

5  and employees, who were acting within the scope of their authority, course of their employment, and

6  under the direct control of the Defendant CHP.

7      9.      At all times herein, Corleen Lambert (Supervisor II/Manager),  Kimberly Holder

8  (Chief Technology Officer/Commander), Alfredo Rivera (Supervisor II), Scott Howland (Chief

9  Information Officer), Jay Song (Commander), Isaac Ryland (Manager), and Jason Strickland

10 (Supervisor II), were agents, servants and employees acting within the scope of their authority and

11 course of their employment. Plaintiff is informed and believes the agents, servants  and employees

12 are responsible for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were

13 proximately caused by their conduct.

14                          **JURISDICTION AND VENUE**

15     10.     This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C.

16 § 1331, as this case involves questions of federal law. This Court also has jurisdiction pursuant to 28

17 U.S.C. § 1343 because Plaintiff seeks damages for violation of his civil rights.

18     11.     This Court has supplemental jurisdiction over the related state law claims pursuant to

19 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III

20 of the United States Constitution. Plaintiff's state law claims share all common operative facts with

21 his federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a

22 single action serves the interests of judicial economy, convenience, consistency, and fairness to the

23 parties.

24     12.     Venue is proper in that Defendant CHP is subject to the personal jurisdiction of this

25 Court because Defendant maintains facilities and business operations in this District, and all or most

26 of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. §

27 2000e-5(f)(3).

28

1

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

2      13.     On or about March 9, 2020, Plaintiff filed a charge of discrimination with the Equal

3  Employment Opportunity Commission ("EEOC") which was automatically dual filed with the

4  California Department of Fair Employment and Housing ("DFEH"). The EEOC charge was docketed

5  as EEOC Case No. 555-2020-00708C. The DFEH charge was given number the  same Case No. 555-

6  2020-00708C. On March 18, 2020, Plaintiff received a Notice of Right to Sue from the DFEH for

7  case No. 555-2020-00708C which stated that Plaintiff could file a lawsuit within one year from the

8  date of the DFEH's notice of Right to Sue or within 90 days from receipt of the federal right to sue

9  letter, whichever is later. Said Right to Sue letter is attached hereto as **Exhibit A.**

10      14.     On or about October 14, 2020, Plaintiff filed a Whistleblower Retaliation Complaint

11  with the California State Personnel Board ("SPB"). On or about December 11, 2020, SPB issued

12  Plaintiff a letter specifying he had exhausted his administrative remedies with the California State

13  Personnel Board and authorizing Plaintiff to pursue civil action under Government Code § 8547.

14      15.     On or about January 29, 2021, Plaintiff filed a second charge of discrimination with

15  the EEOC docketed as EEOC 555-2021-00438C.

16      16.     The EEOC by and through the U.S. Department of Justice ("DOJ") issued a Notice of

17  Right to Sue in EEOC Case No. 555-2020-00708C on or about April 30, 2021. Said Right to Sue

18  letter is attached hereto as **Exhibit B.**

19      17.     Pursuant to Plaintiff's request, the investigation into his second charge (EEOC Case #

20  555-2021-00438C) was terminated and DOJ issued a Right to Sue on September 29, 2021. Said Right

21  to Sue letter is attached hereto as **Exhibit C.**

22      18.     On or about November 15, 2021, Plaintiff filed a charge with DFEH and obtained an

23  immediate Right to Sue from the DFEH for disability discrimination,  the failure of CHP to engage

24  in interactive process and provide reasonable accommodation. The matter was assigned Case No.

25  202111-15374412 and the Right to Sue letter is attached hereto as **Exhibit D.**

26      19.     Accordingly, Plaintiff has exhausted his administrative remedies as to his state and

27  federal claims.

28

# **PROCEDURAL BACKGROUND**

20.     On or about March 9, 2020, Plaintiff filed a formal complaint with the EEOC, docketed as EEOC 555-2020-00708C. On or about March 18, 2020, EEOC served Defendant CHP with the Charge of Discrimination. Defendant CHP had 30 days to respond or request an extension, but Defendant took no action. EEOC reached out to Defendant and offered a verbal extension in which they were given until September 4, 2020, to respond, however Defendant again failed to take any action. On September 16, 2020, EEOC submitted a Letter of Determination inviting both Plaintiff and Defendant to engage in conciliation in an effort to reach a resolution. On September 21, 2020, EEOC provided a proposed Conciliation Agreement between EEOC, Defendant, and Plaintiff, however Defendant indicated that they were unwilling to engage in conciliation. On September 24, 2020, EEOC issued a letter stating efforts to conciliate this matter were unsuccessful and the case was now being referred to the U.S. Department of Justice for its review. On or about April 30, 2021, the Notice of Right To Sue was issued.  On January 21, 2021, Plaintiff filed a second EEOC charge, bearing charge number EEOC 555-2021-00438C.

21.     Following the EEOC's issuance of a Right to Sue letter on Case No. 555-2020-00708C, Plaintiff filed his Complaint for Damages on July 30, 2020 before the Superior Court of Sacramento, State of California entitled *Adrian Romero, Jr. v. California Highway Patrol, et al.,* designated as Case No. 34-2021-00305203.

22.     On September 28, 2021, Plaintiff filed his First Amended Complaint and served it on CHP.

23.     On September 29, 2021, Plaintiff received EEOC's Notice of Right to Sue letter on to his second charge of discrimination (EEOC  Case No. 555-2021-00438C).

24.     On October 26, 2021, Defendant filed a Notice of Removal of the Plaintiff's Complaint to this Court, entitled *Adrian Romero, Jr. v. California Highway Patrol, et al.,* designated as Case No. 2:21-cv-01978-JAM-DB, thereby transferring the jurisdiction of the Plaintiff's case to the U.S. District court.

25.     Following the parties' met and confer, the parties agreed to extend the time for Defendant to respond to the First Amended Complaint. Due to receipt of the Right To Sue pursuant

1   to his second EEOC charge, Plaintiff sought to file a Second Amended Complaint. After the parties

2   met and conferred, the parties stipulated to the filing of Plaintiff's Second Amended Complaint.

3        26.    As agreed, Plaintiff's Second Amended Complaint was filed on November 29, 2021.

4   After further meet and confer regarding the contents of the Second Amended Complaint, the parties

5   stipulated to the filing of the instant Third Amended Complaint.

6                              **STATEMENT OF FACTS**

7        27.    Plaintiff commenced employment with the CHP on July 25, 2018. He was hired as an

8   Information Technology Associate under the supervision of Stanley Meeks, Supervisor I and Colleen

9   Lambert ("Lambert"), Supervisor II. During his tenure as an Associate, Plaintiff received positive

10  feedback regarding his performance. As a result, Plaintiff applied for a promotion as an Information

11  Technology Supervisor I and was offered the job.

12       28.    Plaintiff was appointed as the Information Technology Supervisor I position in May

13  2019. The Information Technology Supervisor I position had a one-year probationary period, from

14  May 1, 2019 to April 30, 2020.

15       29.    On September 5, 2019, Plaintiff received his first performance review as an

16  Information Technology Supervisor I. The performance appraisal was positive and stated that

17  Plaintiff's performance was either standard or outstanding in all ten categories.

18       30.    On November 18, 2019, Plaintiff received a concerning email from Andy Roadman

19  ("Roadman"), one of Plaintiff's direct reports. Roadman was at the time and is currently an employee

20  of Defendant CHP with a disability. Roadman informed Plaintiff that he did not get the lateral position

21  that he applied for and expressed his concern and dissatisfaction with the way Lambert handled the

22  hiring process. In addition, he indicated that he believed that Lambert improperly showed preferential

23  treatment or favoritism toward another applicant which Lambert knew personally, in violation of the

24  civil service/merit system. Based on Roadman's email, Plaintiff in good faith, reasonably believed

25  that Roadman's disability could be a factor for why Lambert did not select Roadman for the position

26  since Plaintiff knew Roadman was qualified.

27  //

28

1    31.    Due to the nature of Roadman's concerns, Plaintiff notified their Commander, Jay
2    Song, and referred Roadman to Human Resources (HR), both of whom Plaintiff believed were better
3    suited to address Roadman's concerns.

4    32.    According to CHP policy, HPM 10.12, Ch 6(12)(a)(1), "If any employee believes they
5    have been discriminated against and brings it to the attention of a supervisor . . . the supervisor . . .
6    shall notify the affected commander".  Defendant's policy further states, "The supervisor . . .is legally
7    obligated to ensure the work environment is free of discrimination."

8    33.    Plaintiff reasonably believed that Roadman's concerns raised potential violations of
9    EEO and/or ADA laws, being that Roadman is disabled, physically confined to a wheelchair, and was
10   overlooked for a position he was well qualified for and was in fact already performing some of the
11   job duties.

12   34.    On the next day, November 19, 2019, Plaintiff was called to the office of Lambert.
13   Lambert chastised him and accused him of violating the CHP rules. Lambert told Plaintiff that he
14   broke the chain of command when he did not inform her (Lambert) first regarding Roadman's
15   complaint about her before going to Commander Song, despite Plaintiff having complied with CHP
16   reporting policy. Plaintiff did not inform Lambert of Roadman's complaint as she was the subject of
17   the complaint.

18   35.    On November 21, 2019, Plaintiff was verbally chastised by his then supervisor,
19   Alfredo Rivera ("Rivera") for allegedly violating the chain of command when Plaintiff notified
20   Commander Song without informing Lambert of Roadman's grievance and when Plaintiff referred
21   Roadman to  HR. Plaintiff is informed and believes that Roadman pursued a claim with EEOC
22   regarding his concerns regarding the denial of the lateral transfer. Shortly thereafter, Rivera met with
23   Roadman, and Plaintiff is informed and believes that Rivera discouraged Roadman from filing a
24   complaint or reaching out to HR regarding his concerns.

25   36.    After Plaintiff reported Roadman's grievance to Commander Song, Plaintiff
26   immediately observed that the CHP upper management's treatment and attitude toward him changed.
27   Prior to reporting Roadman's complaint, he communicated with management on a regular basis and
28   attended management meetings. After November 19, 2019, he was kept out of loop of communication

1  on work-related matters by Rivera and Lambert.  In addition,  Rivera began to bypass Plaintiff and

2  directly communicate with Plaintiff's staff on work-related matters, thereby interfering with

3  Plaintiff's ability to properly manage his team.

4         37.     Plaintiff also began to experience a series of adverse employment actions. On January

5  3, 2020, Rivera gave Plaintiff a negative performance appraisal for the period covering September 26,

6  2019 to January 2, 2020. Plaintiff was not apprised before the performance appraisal of any concerns

7  with his performance. In addition, the performance appraisal was not focused on the quality of

8  Plaintiff's overall performance and effectiveness of his work. Instead, Rivera based his appraisal on

9  four specific instances, one of which was that Plaintiff failed to take Roadman's concerns of disparate

10  treatment through the chain of command. Rivera intentionally deviated from CHP's "Performance

11  Review Guidelines" by utilizing the performance appraisal as an opportunity to write up Plaintiff by

12  issuing him a "Plan of Action". Rivera based Plaintiff's Plan of Action on four specific instances as

13  opposed to the quality and quantity of Plaintiff's overall performance and effectiveness of his work.

14  Rivera intentionally deviated from the CHP Performance Review Guidelines when he issued a

15  negative performance review on Plaintiff.

16         38.     The performance appraisal cites that Plaintiff needs improvement on 5 of the 10 areas,

17  namely, Critical Tasks, Leadership, Judgment and Problem Solving, and Interpersonal Skills, and

18  Administrative and Specialized Assignments. What was supposed to be a performance appraisal

19  became a write up as it alleged that Plaintiff had engaged in misconduct and was all of a sudden

20  deficient in several areas.  The performance appraisal alleged that: (1) Plaintiff was late on the October

21  23, 2019 weekly meeting and acted irate with Rivera when Rivera approached him; (2) Plaintiff failed

22  to take Roadman's complaint through the chain of command; (3) Plaintiff made negative comments

23  about his team and portrayed a negative attitude; and (4) Plaintiff was non-responsive to requests and

24  non-cooperative to administrative requests.

25         39.     Upon reading the performance appraisal, and meeting with Rivera on January 3, 2020,

26  Plaintiff told Rivera that he felt he was "being targeted" and that "this was a personal attack" on him.

27  Rivera directly responded, "Yes, this is personal." Plaintiff believes that Rivera's response reveals

28

that Rivera's poor performance assertions contained in his performance evaluation were pretext and were motivated by retaliatory animus for Plaintiff not reporting Roadman's complaint to Lambert.

40.     On or about January 10, 2020, Plaintiff submitted a rebuttal to the January 3, 2020 negative performance appraisal stating among other things, that Rivera failed to follow proper protocol and procedures in that Rivera did not follow the CHP performance review guidelines. Plaintiff also reported in his rebuttal the improper hiring practices of Lambert in the department and misconduct/violation of policy by Lambert and Rivera.  Plaintiff requested that his performance appraisal be modified or removed to accurately reflect his performance and through his rebuttal, he effectively refuted the allegations of misconduct in the false and negative performance appraisal.

41.     On January 13, 2020, Plaintiff met with Commander Song who was in possession of Plaintiff's rebuttal but stated he had not yet reviewed it. Commander Song denied Plaintiff's request for removal or modification of the negative retaliatory performance appraisal. During said meeting, Plaintiff informed Commander Song he was going to file an EEO complaint as Plaintiff believed that what was occurring to him was inconsistent with CHP policy and that he was a victim of retaliation. Commander Song told Plaintiff, "You don't have a case," as if to discourage, intimidate and coerce him not to pursue his rights.

42.     On January 22, 2020, Plaintiff is informed and believes that Commander Song met with CHP's internal EEO Counselor Deanna Silvera and per her notes, Commander Song made it seem as if Plaintiff "needed to go", as in "not pass probation."

43.     On January 31, 2020, Plaintiff met with Rivera and Ryland to discuss his performance appraisal and rebuttal. Plaintiff, suspecting further retaliation and possible imposition of discipline, requested  EEO Counselor, Deanna Silvera be present, but was denied. During the meeting, Rivera spoke to Plaintiff in a raised voice/tone, in a demeaning, harassing and disrespectful manner thereby creating a work environment wrought with hostility causing Plaintiff emotional distress. Rivera informed Plaintiff that he was being placed on Interim Reporting because of the alleged failure of meeting the critical tasks noted in his January 3, 2020 performance appraisal. However, Plaintiff rebutted in writing all of the alleged failure to meet critical tasks and felt that the allegations were pretextual.  In addition, Plaintiff pointed out that Interim Reporting was inappropriate as Rivera had

1    failed to follow CHP's "Progressive Discipline Review Guidelines" by not following the proper

2    disciplinary steps as described therein before placing Plaintiff on Interim Reporting. At no point prior

3    to this meeting did Rivera or any one at CHP issue Plaintiff a Memorandum of Counseling, Corrective

4    Memoranda, Memorandum of Direction; Censurable CHP2, Incident Report as required by the

5    Highway Patrol Manual ("HPM") 10.10, Ch.5 3(c)(1).

6        44.    CHP's "Progressive Discipline Review Guidelines" require that certain disciplinary

7    steps occur before placing an employee on Interim Reporting. Highway Patrol Manual ("HPM")

8    10.10, Ch.5 3(c)(1) requires that one receive a Memorandum of Counseling, Corrective Memoranda,

9    Memoranda of Direction, Censurable CHP2 before one is placed on Interim Reporting. Adherence to

10   this process was confirmed by Commander Song at Defendant's Weekly Managers meeting on

11   October 7, 2019.  Commander Song indicated during this meeting that proper "documentation must

12   be made before taking [any disciplinary] action." Additionally, Commander Song stated, "Interim

13   Reporting cannot be the first action. The issue must have previously been documented via a MOC

14   and MOD," which in Plaintiff's case there was no previous documentation of any kind.

15       45.    On February 6, 2020, Rivera sent Plaintiff a Memorandum of Counselling citing

16   Plaintiff for allegedly displaying unprofessional behavior throughout the January 31, 2020 meeting.

17   Rivera claimed that Plaintiff was defensive and unprofessional towards him; created a disturbance in

18   the work area and attempted to "bark orders" at him. However, it was Rivera who was unprofessional

19   and downright degrading and demoralizing by describing Plaintiff as an animal by stating Plaintiff

20   was "barking orders". Rivera did not like that Plaintiff went to Commander Song with Roadman's

21   concerns about Lambert, disliked that Plaintiff refuted all of his assertions in his rebuttal showing

22   they were pretextual, and the fact that Plaintiff pointed out his noncompliance with policy. Rivera

23   refused to go over the Interim Reporting with Plaintiff as Plaintiff was only trying to ascertain why

24   he was placed on Interim Reporting in the first place. Rivera was so bothered by Plaintiffs request

25   that he aggressively pulled his chair up against the table, leaned over, and with a stern look and harsh

26   tone told Plaintiff, "I wrote it, I know what's in it, you need to read it."

27   //

28   //

46.     Plaintiff submitted a written rebuttal to Rivera's February 6, 2020 Memorandum of Counseling on or about February 27, 2020. In his rebuttal, Plaintiff requested a review of the decision to place him on Interim Reporting.

47.     On February 10, 2020, Plaintiff filed an internal complaint with CHP's EEO department about the retaliatory treatment he received from management at CHP and the discriminatory and preferential treatment that Lambert utilized in handling the hiring process involving Roadman.

48.     Despite his attempt to get redress by filing with the internal EEO office, the discriminatory and retaliatory behavior by CHP management against Plaintiff continued. Rivera and Lambert continue to nitpick at absolutely everything Plaintiff did and treated Plaintiff differently than his peer, Jason Strickland, a Caucasian male who held the same position as Plaintiff. For example, Mr. Strickland was routinely privy to the work related information necessary to do the job, while Plaintiff was excluded.

49.     On February 14, 2020, Plaintiff met with Chief Scott Howland ("Howland") and Commander Kimberly Holder ("Holder") regarding the internal EEO complaint filed a few days earlier and his rebuttals. Chief Howland stated there was a lot of information contained in his rebuttals and he would need another 30 days to review.

50.     No further meeting with Chief Howland ever occurred. Instead, it was Commander Holder and Rivera who met with Plaintiff and handed him modified versions of his Performance Appraisal, Interim Reporting, and Memorandum of Counseling. The modifications made were a result of the items that were submitted in Plaintiff's rebuttal which refuted the allegations of misconduct.

51.     The modified versions of his Performance Appraisal, Interim Reporting, and Memorandum of Counseling. were pretextual and done for the purpose of commencing progressive discipline and punishing him in retaliation for not " following the chain of command". By removing the original write-ups, Defendant CHP would then have the ability to remove all of Plaintiff's rebuttal evidence from his personnel file as if they never existed. Commander Holder actually stated that it was to Plaintiff's "benefit as it is only fair to him for those documents to be removed". She further stated that it is CHP's policy to remove any rebuttals or related documents when a "corrected

document" is replaced. However, CHP did not indicate that the document was the "corrected document" or show the current date.  Instead, Defendant modified the write-ups keeping the original dates on those documents making it seem as if the originals never existed.

52.     Plaintiff specifically requested Defendant CHP to leave all rebuttals in his personnel file and to make a notation on the corrected write-ups by adding an amended memorandum reflecting modifications were made by CHP and to specify the correct date of such modifications to avoid any ambiguity. However, Defendant proceeded to remove Plaintiff's rebuttals and did not correct nor clarify the dates of the modified version of documents.

53.     By removing Plaintiff's rebuttals, Defendant was making it seem as if Plaintiff never opposed them, and that they were valid write-ups. In addition, Plaintiff's rebuttals contained a plethora of information, events and situations of malfeasance that Defendant did not want to come to light. From Lambert's unlawful hiring practices, having employees working out of class, modifying employees job duty statements without their knowledge, and the unsurmountable amount of harassment and retaliation employees faced  anytime Lambert felt her authority being questioned.

54.     Plaintiff's performance was never an issue or in question until he reported and opposed discrimination against Roadman, informed Roadman of his EEO rights and forwarded his complaint to Commander Song. Plaintiffs prior appraisals and reviews were exemplary. Since Plaintiff reported Roadman's concerns to Commander Song, referred Roadman to Human Resources and filed his own EEO/EEOC charges, he has been subjected to ongoing harassment and unwarranted adverse employment actions. The evidence reveals that Plaintiff received disciplinary write ups  three times in less than 45 days for infractions that regularly go undisciplined within Defendant CHP.

55.     Lambert's practice of showing favoritism in hiring decisions and disregarding the merit system rules is a direct violation of CHP's duty under the state's merit base civil service system rooted in the California State Constitution. In the manner in which Roadman was treated, CHP also violated its own policy to provide equal employment opportunities for all applicants and employees at all levels including at the hiring and promoting levels without regard to disability.

//

56.     On March 9, 2020, Plaintiff filed his claim with the EEOC (EEOC Case No. 555-2020-00708C). On March 18th, EEOC served Defendant with Plaintiff's  Charge of Discrimination based on Retaliation. Defendant had 30 days to respond or request an extension, but Defendant took no action. EEOC reached out to Defendant and offered a verbal extension in which they were given until September 4, 2020, to respond, however Defendant again failed to take any action.

57.     On or about August 14, 2020, Plaintiff's counsel sent a demand letter to CHP Commissioner Stanley, highlighting the unlawful behavior of CHP agents in engaging in discriminatory, harassing and retaliatory conduct in violation of Labor Code § 1102.5 and other federal and state laws. No response to said letter was ever received from or on behalf of CHP.

58.     On or about September 16, 2020, EEOC submitted a Letter of Determination inviting both Plaintiff and Defendant to engage in conciliation in an effort to reach a resolution. On September 21st EEOC provided a Conciliation Agreement between EEOC, Defendant, and Plaintiff, however Defendant indicated that they were unwilling to engage in conciliation. On September 24th, EEOC issued a letter stating efforts to conciliate this matter were unsuccessful and the case was being referred to the U.S. Department of Justice for its review.

59.     On or about March 26, 2020, Plaintiff began working remotely due to the Coronavirus outbreak as Plaintiff is considered high risk, due to his chronic health condition. Plaintiff provided Lambert with a doctor's note at which point Lambert stated Plaintiff could not return to the premises without a doctor's release. Three weeks later Plaintiff received another write-up—a Memorandum of Direction. (MOD)

60.     Following the filing of EEOC charge against CHP, Plaintiff suffered additional tangible adverse employment actions. For example, on April 15, 2020, Plaintiff received another Memorandum (MOD) wherein he was accused of neglect of duty and willful disobedience for failing to complete assignments directed by Rivera on previous write ups dated back to January 2020. Plaintiff was also informed by Lambert and Holder that his Interim Reporting was being extended for another 90 days or until June 30, 2020, despite the fact that Interim Reporting which took effect on January 3, 2020 had already ended on March 31, 2020.  In addition, Defendant denied Plaintiff his merit salary increase claiming they(CHP) could not certify Plaintiff's performance met the level of

1   quality and quantity expected by the Department. Plaintiff subsequently submitted a rebuttal to the
2   (MOD)Memorandum of Direction on May 13, 2020.

3       61.    Plaintiff is informed and believes that Lambert and Holder's decision to extend
4   Plaintiff's Interim Reporting and to deny Plaintiff his merit salary increase was not based on any valid
5   reasons but purely based on Lambert and Holder's animosity and retaliatory animus against Plaintiff
6   for reporting Roadman's concern to Commander Song, filing the EEO and EEOC charges and
7   submitting rebuttals to Rivera's memorandums disclosing and whistleblowing about the malfeasance
8   engaged in by Lambert and Rivera.

9       62.    Fifteen days after the April 15, 2020 (MOD)Memorandum of Direction, and contrary
10  to Lambert's and Commander Holder's observation of Plaintiff's performance not meeting the level
11  of quality and quantity expected by the Department, Plaintiff received notice that he had been
12  appointed to an Information Technology Supervisor I and issued a Certificate by Commissioner
13  Stanley on May 1, 2020.

14      63.    Twelve days later or on May 13, 2020, Plaintiff received his final probationary review
15  which seem to contradict everything he had received in the form of adverse actions and write ups.
16  Defendant confirmed Plaintiff's passing of probation and recommended him for permanent civil
17  service.

18      64.    CHP cut short the reasonable accommodation provided to the Plaintiff when he was
19  ordered to report back to the worksite on June 8, 2020. Plaintiff did not have the necessary doctor's
20  clearance at the time that he was ordered to report back to the worksite. No  interactive process  was
21  conducted by CHP to determine whether an effective and reasonable accommodation was available
22  for Plaintiff before it ordered Plaintiff to report back to the worksite.  Upon Plaintiff's return to the
23  worksite, Plaintiff noticed precautionary measures and CDC COVID-19 guidelines were not being
24  followed nor was Defendant enforcing them. Employees were not wearing mask, nor were they
25  mandated to do so, and proper sanitation items were not immediately provided, despite the fact there
26  were several outbreaks happening within the Department.

27      65.    Upon returning in person to the worksite in June 2020, the targeting in the form of lack
28  of communication and unprofessionalism from Lambert and Rivera continued. They intentionally

1    kept Plaintiff out of discussions pertaining to his team and the IT department which negatively

2    impacted Plaintiff's ability to do his job, and manage his team properly and effectively. Lambert and

3    Rivera continued giving Plaintiff last minute assignments without enough information and short

4    deadlines with the intention of having him fail and giving them another reason to write him up.

5        66.    With CDC COVID-19 guidelines and precautions not being followed by Defendant,

6    in addition to the insurmountable amount of stress Defendant was placing Plaintiff under, Plaintiff

7    had no other choice but to take an eight-week medical leave of absence. Plaintiff has suffered two

8    previous heart attacks and was afraid of suffering yet another attack as the pervasive and severe hostile

9    work environment continued. Plaintiff's medical leave of absence per his doctor's recommendation

10    was effective June 15 through August 10, 2020. During his leave, Plaintiff elected to have his leave

11    credits integrated with his disability payments.  However, CHP failed to properly integrate causing

12    Plaintiff to have to live off less income while on leave than what he was entitled resulting in financial

13    hardship.

14        67.    Plaintiff returned to work on August 11, 2020. When Plaintiff returned back to work,

15    nothing much on the premises had changed, employees were still not wearing masks, sanitation

16    stations were low and, in most cases, empty.   In addition, due to Plaintiff's chronic health conditions,

17    he is considered high risk under the Centers for Disease Control and Prevention COVID-19

18    guidelines. As a result, Plaintiff submitted a doctor's note with a request for accommodation to work

19    remotely. Plaintiff began teleworking on August 17, 2020.

20        68.    On August 18, 2020, having been back on the job for just one week, the harassing and

21    retaliatory treatment resumed.  Plaintiff received an email from Rivera chastising him for behavior he

22    found concerning and necessary to document, from Plaintiff being 3 minutes late to a meeting,

23    Plaintiff's tone of voice during the meeting and Plaintiff's lack of response when Rivera said, "good

24    morning". These are infractions that regularly go unnoticed and undisciplined in the CHP workplace;

25    however, Rivera would look for every trivial reason to call Plaintiff's attention as a means and

26    opportunity to harass and discipline him. In response to Rivera's documentation, Plaintiff submitted

27    a response on August 26, 2020, refuting Rivera's alleged concerns and asking him to cease and desist

28    from harassing and targeting him.

1    69.    On August 28, 2020, at exactly 10:05 am, Plaintiff received a Memorandum from

2   Commander Holder indicating that his Interim Reporting would be extended for the second time until

3   October 30, 2020. Commander Holder told Plaintiff that the extension was due to his absence from

4   the workplace, referring to the eight (8) weeks of medical leave that Plaintiff took from June 15, 2020

5   to August 10, 2020.

6    70.    Plaintiff is informed and believes that the reason given by Commander Holder for

7   extending his Interim Reporting was pretextual because Plaintiff would have completed his Interim

8   Reporting on June 30, 2020 if not for his medical conditions which placed him off work from June

9   15, 2020. If the extension was based on his medical leave, Plaintiff's Interim Reporting should have

10   been until August 26, 2020 considering that he missed only 15 days of the 90-day Interim Reporting

11   period.

12    71.    Plaintiff is informed and believes that Commander Holder's decision to extend

13   Plaintiff's Interim Reporting was to prevent him from applying for the Supervisor II position, thereby

14   intentionally denying him a promotional opportunity. Commander Holder posted the Supervisor II

15   position August 28, 2020 at 10:17 a.m., 12 minutes after notifying Plaintiff of the second extension

16   of Interim Reporting.

17    72.    CHP knew or should have known that Plaintiff was interested in applying for and

18   would be very much qualified for the Information Technology Supervisor II position with his

19   background, experience, education, and training. CHP also knew or should have known that placing

20   Plaintiff under Interim Reporting will disqualify him from applying for the Information Technology

21   Supervisor II position, thereby intentionally denying him promotional opportunities.

22    73.    On October 15, 2020, Commander Holder notified Plaintiff he was now off of Interim

23   Reporting and the very next day, on October 16th, they announced Jason Strickland's promotion to

24   the Supervisor II position.  Plaintiff was denied the opportunity to apply for the promotional position

25   due to  second extension of Interim Reporting Commander Holder unjustly subjected him to. CHP

26   chose Strickland, a less qualified Caucasian male, despite Strickland's lack of Information

27   Technology (IT) or managerial experience, which is one of the primary requirements for  the position,

28

1   and the fact that he was Plaintiff's mentee.   Prior to his promotion to Information Technology

2   Supervisor II position,  Strickland was an Information Technology  Associate reporting to Plaintiff.

3   74.   CHP also informed Plaintiff  that his merit salary increase will be effective as of

4   November 1, 2020. CHP did not allow his merit salary increase to be retroactive to May 2020 when

5   he was appointed, even though his probationary period ended on April 30, 2020. CHP unlawfully

6   withheld Plaintiff's merit salary increase due in May 2020 due to the unwarranted memorandums that

7   made it appear that he had not completed his probationary period on time.

8   75.   On or about August 26, 2021, CHP requested that Plaintiff sign a new duty statement

9   for the Supervisor I position in which CHP unilaterally removed most of the  supervisory duties away

10  from Plaintiff, essentially demoting him from his Supervisor I position. Plaintiff thus refused to sign

11  the new duty statement.

12  76.   Shortly thereafter, on September 15, 2021, CHP denied Plaintiff's request for a

13  reasonable accommodation to continue teleworking as his medical condition placed him at an

14  increased risk for life-threating complications should Plaintiff contract COVID-19 which could

15  potentially cause long term disability or death. Plaintiff is informed and believes that the denial is just

16  another form of retaliation as Defendant continues to have complete disregard for Plaintiff's life

17  despite his doctor's recommendation to avoid contact with others.

18  77.   Plaintiff also believes he was denied a reasonable accommodation in retaliation and as

19  punishment due to his refusal to sign a new duty statement on August 26, 2021, in which Defendant

20  took supervisory duties away. After his refusal to sign that new duty statement, CHP wanted Plaintiff

21  to sign a Memorandum of Conversation on September 1, 2021 which inaccurately and improperly

22  stated the conversation that took place. Because of the continued retaliation, and his refusal to sign

23  both the duty statement and the memorandum, CHP again requested a letter from his doctor despite

24  the fact that they had just received one 24 days prior and his medical condition had not changed.

25  Plaintiff provided CHP with another doctor's letter on September 9, 2021 which they disregarded by

26  denying his accommodation request and ordering him back to work September 15, 2021.

27  78.   Plaintiff also was denied accommodation without any engagement in the interactive

28  process as required by law before he was ordered to return in person to the office. In addition, the

1  denial of his accommodation request is further targeting and disparate treatment by CHP towards

2  Plaintiff. Plaintiff has submitted his doctor's note and the doctor clearly indicates that Plaintiff has an

3  underlying chronic medical condition that places him at an increased risk for life threatening

4  complications should he contract COVID-19 and requested if he could work remote. However, on

5  September 15, 2021, CHP denied Plaintiff's request claiming, "operational needs of the command"

6  and ordered him to return back to work on September 20, 2021. Plaintiff filed an appeal which appeal

7  has been denied. Plaintiff caught COVID-19 after he returned back to work.

8      79.    Plaintiff's accommodation request was reasonable but CHP failed to show that the

9  request creates an undue burden for CHP.

10     80.    Commander Holder's inaction, inability and refusal to stop the retaliatory treatment by

11  CHP staff constitutes a  failure to protect Plaintiff and prevent retaliation. CHP has knowledge and is

12  aware of the retaliatory acts against Plaintiff  because he reported a discrimination claim potentially

13  violating EEO and/or ADA laws and exposing Lambert's improper hiring practices which Defendant

14  has allowed to continue.

15     81.    Lambert's unlawful hiring practices are not only improper and unethical but are also

16  in direct violation of State of California's "Merit Base Civil Service System" rooted in the California

17  State Constitution and Government Code § 8457, and which CHP has a duty to abide and adhere.

18     82.     CHP is in violation of its policy to provide equal employment opportunities for all

19  applicants and employees at all levels including at the hiring and promoting levels without regard to

20  disability, harassment and retaliation amongst other categories protected under state and federal civil

21  rights laws.

22     83.    Plaintiff believes that he has been harassed and retaliated against for his protected

23  activities and his participation in opposition of such behavior, which is in violation of the Americans

24  with Disabilities Act.

25     84.    Plaintiff further believes that CHP permitted the harassment and retaliatory acts against

26  him and failed to take the appropriate actions to avoid and/or correct such actions from taking place.

27  //

28  //

85.     Defendant has dragged Plaintiff's name through the mud damaging his reputation and credibility. Defendant has made it impossible for Plaintiff to promote by constantly keeping him on a writeup. Additionally, Defendant has created a financial hardship for Plaintiff by the denial of Plaintiff's merit salary increase.

86.     Lambert and Rivera's actions have caused Plaintiff a great deal of emotional stress which has negatively impacted Plaintiff's health. Plaintiff has sought treatment from a therapist and currently under a doctor's care.

**FIRST CAUSE OF ACTION**

**DISABILITY DISCRIMINATION/ RETALIATION**

**In Violation of ADA (42 U.S.C. § 12203(a))**

87.     Plaintiff incorporates herein all previously alleged paragraphs 1 through 86 above.

88.     The Americans with Disability Act (ADA) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

89.     To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action. (Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)). A plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." *Id*

90.     CHP is, and was at all times material hereto, an employer within the meaning of the ADA, and as such, is barred from discriminating on the basis of the individual's disability to job application procedures, the hiring, and advancement of employees.

//

91.     Roadman, whom Plaintiff assisted in his disparate treatment claim, is and was at all times material hereto an employee of CHP covered by the ADA, prohibiting discrimination in employment based upon disability. Roadman is confined to a wheelchair.

92.     Plaintiff engaged in protected activity when he reported and assisted Roadman in his discrimination claim against Lambert, filed an internal EEO charge and  filed his EEOC charge, asserting his rights under the ADA.

93.     Within days and/or weeks of Plaintiff's reporting of Roadman's complaint to Commander Song, referring Roadman to Human Resources, filing of internal EEO claim and after the filing of his EEOC charge, Plaintiff suffered adverse employment actions in the form of multiple unwarranted adverse employment actions such as; write-ups and memorandums; unwarranted and false poor performance appraisal which was inconsistent with the CHP guidelines;  placed on interim reporting for an extended periods of time which prevented him from applying to other positions; denied timely and accurate merit salary increase because of the baseless retaliatory accusations from CHP agents Lambert and Rivera.

94.     Plaintiff's involvement in protective activity was the motivating factor for CHP's adverse employment actions towards Plaintiff. Plaintiff had not received write-ups, a negative performance appraisal, or any memorandums from any one on behalf of CHP, including Lambert and/or Rivera until after Plaintiff reported Roadman's allegations against Lambert to Commander Song, and filed his charge. Rivera's proffered reason for Plaintiff's negative performance appraisal is pretextual as was not based on Plaintiff's overall performance but improperly grounded on Plaintiff's conduct of directly reporting Roadman's grievance to Commander Song, despite the fact that Plaintiff's reporting of Roadman's complaint was consistent with CHP policy. Notwithstanding, Plaintiff was placed in interim reporting several times and was denied merit salary increase by Lambert and Rivera who both expressed their retaliatory intent against him, under the guise of "failure to follow the chain of command."

95.     As a direct and proximate result of Defendant's actions as alleged herein, CHP has breached its duties imposed on all employers as established by statute.

1    96.    As a direct and proximate result of the CHP's discrimination, Plaintiff has suffered

2  lost income and salary increases, and lost other employment opportunities, in an amount to be proven

3  at trial.

4    97.    As a further proximate result of Defendant's unlawful actions, Plaintiff has suffered

5  emotional pain, humiliation, mental anguish, and distress.

6                               **SECOND CAUSE OF ACTION**

7                      **INTERFERENCE, COERCION AND INTIMIDATION**

8                      **In Violation of ADA  (42 U.S.C. § 12203(b) et. seq.)**

9    98.    Plaintiff incorporates all previously alleged paragraphs 1 through 97 above.

10    99.    42 U.S. Code § 12203(b) provides "It shall be unlawful to coerce, intimidate, threaten,

11  or interfere with any individual in the exercise or enjoyment of, or on account of his or her having

12  exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in

13  the exercise or enjoyment of, any right granted or protected by this chapter."

14    100.    Plaintiff exercised his right to report to his employer Roadman's concerns of disparate

15  treatment to Commander Song and referred Roadman to Human Resources. Plaintiff further exercised

16  his right to file an internal EEO charge and a EEOC charge for the disparate treatment he was

17  experiencing.

18    101.    Shortly after exercising his rights, Plaintiff was then subjected to a pattern of

19  intimidation by his CHP supervisors and Commander. CHP deliberately gave Plaintiff false and unfair

20  performance reviews, inappropriate memorandums, prolonged Interim Reporting period and delayed

21  the award of his merit salary increase to intimidate Plaintiff and to keep him exercising his rights and

22  further reporting the retaliatory actions of his supervisors and Commander.

23    102.    As a direct and proximate result of CHP's persistently hostile behavior as alleged

24  herein, CHP has breached its duties imposed on all employers as established by statute.

25    103.    As a direct and proximate result of CHP's persistently hostile behavior as alleged

26  herein, Plaintiff has suffered lost income and salary increases, and other employment opportunities,

27  in an amount to be proven at trial.

28

1    104.    As a further proximate result of CHP's persistently hostile behavior as alleged herein,

2    Plaintiff has suffered emotional pain, humiliation, mental anguish, and distress.

3    105.    As a result of this persistently hostile behavior by CHP,  Plaintiff continues to suffer

4    significant physical and mental injuries, including acute distress, severe hypertension and aggravation

5    of his medical condition.

6    106.    As a direct and proximate result of persistently hostile behavior as alleged herein,

7    Plaintiff has suffered lost income and salary increases, and other employment opportunities, in an

8    amount to be proven at trial.

9                              **THIRD CAUSE OF ACTION**

10   **VIOLATION OF THE CALIFORNIA WHISTLEBLOWER PROTECTION ACT (WPA)**

11                      **(Cal. Gov. Code § 8547 et seq.)**

12   107.    Plaintiff incorporates all previously alleged paragraphs 1 through 106 above.

13   108.    Under the California Whistleblower Protection Act (Cal. Gov. Code, § 8547 et seq.),

14   a state employee has a right of action against any person who retaliates against him or her for having

15   made a "protected disclosure." The statute prohibits a "person" from intentionally engaging in acts of

16   reprisal, retaliation, threats, coercion, or similar acts against the employee (Cal. Gov. Code,

17   § 8547.8(c)). Furthermore, Cal. Gov. Code § 8547 et seq. protects state employees who report: 1.

18   violations of law, regulations, executive or court orders; 2.) any condition that may significantly

19   threaten the health or safety of employees or the public; and 3.) governmental activity that is

20   economically wasteful or involves gross misconduct, incompetency, or inefficiency.

21   109.    Plaintiff made a protected disclosure in good faith when he notified Commander Song

22   of Lambert's improper non-merit based hiring practices and blatant favoritism in violation of law.

23   110.    After making said protected disclosure, Plaintiff was subjected to intentional acts of

24   reprisal, retaliation, threats, coercion, or similar acts by Rivera, Lambert and Holder in violation of

25   Cal. Gov Code § 8547.

26   111.    Plaintiff reasonably believed that Roadman's allegations concerning Lambert's

27   conduct in handling the hiring process in which Roadman applied  was a violation of law and the

28   merit system, as she did not offer the position to Roadman who was well qualified for the position

and offered the position to someone less qualified than Roadman. Plaintiff reasonably believed that Roadman was the most qualified candidate for the position. Lambert selected an acquaintance who was unqualified and less qualified for the position than Roadman.

112.   Following Plaintiff's reporting of violations of the merit system rules by Lambert Plaintiff was ridiculed and issued adverse employment actions by Lambert and Rivera under the pretext of violating the chain of command. Moreover, Plaintiff was subjected to multiple write-ups and memorandums, received a negative performance appraisal, unwarranted extension of an unlawful interim reporting which had the effect of preventing him from applying for a promotion, and denied timely and full merit salary increase.

## FOURTH CAUSE OF ACTION

### HARASSMENT

### Fair Employment and Housing Act (Cal Gov. Code §12940(j))

113.   Plaintiff incorporates herein all previously alleged paragraphs 1 through 112 above.

114.   The Fair Employment and Housing Act (FEHA) prohibits harassment based on the employees' protected characteristics including, but not limited to, their mental disability and physical disability. Cal. Gov. Code § 12940(j). Employers are liable for the harassment and harassing acts of their supervisors. Id (j)(1).

115.   Defendant subjected Plaintiff to continuous, pervasive, and severe harassment on a daily and weekly basis as alleged herein and thereby created a hostile work environment as detailed herein.

116.   The hostile work environment, created by the CHP managers and supervisors, was continuous, severe and pervasive due to the frequency of the actions, the nature of the harassment, including egregious derogatory, disrespectful statements made by CHP's agents  expressing animus towards Plaintiff for opposing disability discrimination and engaging in protected activity.

117.   Lambert and Rivera subjected Plaintiff to continuous, pervasive and severe harassment. Plaintiff was yelled at, ridiculed and chastised on a weekly basis after engaging in protected activity in which he opposed acts and practices in violation of state and federal law against Roadman. Plaintiff was issued several write-ups and memorandums in a span of a couple weeks from

the time that he reported Lambert's misconduct to Commander Song. Plaintiff was given a poor performance appraisal allegedly because he failed to follow the chain of command in reporting Roadman's complaint. Lambert and Rivera intentionally gave Plaintiff last minute assignments without enough information with short deadlines and intentionally kept Plaintiff out of discussions pertaining to his team and the IT department. Rivera would yell and scream at Plaintiff regularly at meetings, speak to him in a disrespectful, demeaning  manner and intentionally undermine his ability to manage his staff and assignments by communicating directly with staff and by passing Plaintiff.

118.    Plaintiff considered the aforementioned conduct to be discriminatory, retaliatory and harassment in nature, and as a result reported said conduct, both verbally and in writing to numerous management level employees and departments of CHP including but not limited to Rivera, Lambert, Commander Song, Commander Holder, Chief Howland, and CHP's internal EEO department.

119.    As a result of the continuous, pervasive, and severe harassment described above, Plaintiff suffered damages, including economic losses, and emotional distress, in an amount to be determined at trial.

120.    Because Commander Holder, Lambert and Rivera are managers/supervisors within the meaning of the FEHA, CHP is liable for their harassing conduct.

## FIFTH CAUSE OF ACTION

### RETALIATION

### Fair Employment and Housing Act (Cal. Gov. Code § 12940(h))

121.    Plaintiff incorporates all previously alleged paragraphs 1 through 120 above.

122.    California law guarantees each employee's right to a workplace free from unlawful retaliation because the employee opposed discriminatory or harassing practices that are unlawful under the FEHA. Employers are liable for the retaliatory conduct of supervisors.(Cal. Gov. Code § 12940(h).

123.    The elements of a claim for retaliation in violation of section 12940, subdivision (h), are: (1) the employee's engagement in a protected activity, i.e., "oppos[ing] any practices forbidden under this part"; (2) retaliatory animus on the part of the employer; (3) an adverse action by the

1   employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and

2   (6) causation. (*Mamou v. Trendwest Resorts, Inc.,* (2008)165 Cal. App. 4th 686, 713)

3   124.   After   Plaintiff   reported   Roadman's   discrimination/disparate   treatment

4   complaint/concern against Lambert to Commander Song opposing discrimination against Roadman,

5   Lambert and Rivera retaliated by immediately verbally reprimanding him the next day for allegedly

6   not following the chain of command. He was excluded from team and management communications,

7   he was given a negative Performance Appraisal for the first time, placed on Interim Reporting, denied

8   a timely Merit Salary Increase and issued other disciplinary actions. Plaintiff, had previously received

9   good performance reviews, was not aware of any performance concerns until after he expressed in

10  good faith his opposition to Lambert's potential discrimination against Roadman's and reported

11  Roadman's complaint in a manner consistent with CHP regulations.

12  125.   After Plaintiff filed his discrimination complaint with the internal EEO, and EEOC,

13  CHP, instead of finding a remedy for the discrimination and retaliation, Commander Song further

14  retaliated by denying Plaintiff's request to report to a different supervisor and refused to reverse or

15  modify Plaintiff's performance evaluation despite overwhelming evidence of bias stated in Plaintiff's

16  rebuttal. Plaintiff's allegations of retaliation and harassment were contained in his rebuttals and were

17  never investigated. CHP's failures, actions and inactions as described herein amounted to adoption

18  and ratification of the retaliatory conduct, herein described, to which Plaintiff was subjected to on a

19  daily and ongoing basis.

20  126.   As a result of CHP's conduct, Plaintiff has suffered damages, including economic

21  losses, and emotional distress, in an amount to be determined at trial.

22  **<u>SIXTH CAUSE OF ACTION</u>**

23  **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

24  **Fair Employment and Housing Act (Cal. Gov. Code § 12940(k))**

25  127.   Plaintiff incorporates herein all previously alleged paragraphs 1 through 126 above.

26  128.   Under the law, the employer's duty to prevent harassment and discrimination is

27  affirmative and mandatory. Retaliation is a form of discrimination actionable under Government Code

28  section 12940, subdivision (k). (See *Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal.

1   App. 4th 1216, 1240 (2006)). Cal. Gov. Code § 12940, subdivision (h) and corresponding regulations

2   of the California Fair Employment and Housing Commission, prohibits retaliation against a person in

3   terms conditions or privileges of employment on the basis of engagement in protected activity.

4          129.    The essential elements of failure to prevent discrimination, harassment or retaliation

5   are: 1) plaintiff was subjected to discrimination, harassment, or retaliation; 2) defendant failed to take

6   all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused

7   plaintiff to suffer injury, damage, loss or harm. (See *Leland v. City & County of San Francisco,* 576

8   F.Supp.2d 1079, 1103 (N.D. Cal. 2008) citing California Civil Jury Instructions (BAJI) 12.11.

9          130.    Plaintiff engaged in protected activity when he reported Roadman's discrimination

10   complaint against Lambert to Commander Song. Plaintiff also filed complaints about the mistreatment

11   and violation of his civil rights. In violation of its obligations, CHP failed to conduct a prompt and

12   thorough investigation of Plaintiff's complaints.

13          131.    CHP failed to take all reasonable steps to prevent harassment, discrimination, and

14   retaliation that it knew was occurring based upon protected activity and instead permitted its agents

15   to engage in retaliation against Plaintiff for making complaints and participating in investigations.

16          132.    After Plaintiff filed his discrimination complaint to the internal EEO, CHP, instead of

17   finding a remedy for the discrimination and retaliation, Commander Song permitted and participated

18   in further retaliation by denying Plaintiff's request to report to a different supervisor and refused to

19   reverse or modify Plaintiff's performance evaluation despite overwhelming evidence of bias stated in

20   Plaintiff's rebuttal. Commander Holder failed to take steps to prevent the harassing and retaliatory

21   conduct she was clearly aware was occurring.

22          133.    As a direct result of defendant CHP's failure to take all reasonable steps to prevent

23   these unlawful employment practices, Plaintiff was subjected to unlawful discrimination, harassment

24   and retaliation by CHP's commanders, managers, and supervisors, and suffered economic injuries,

25   including but not limited to, lost wages and compensation, in an amount to be proven at trial.

26          134.    As a direct result of CHP's failure to take all reasonable steps to prevent these unlawful

27   employment practices, Plaintiff was subjected to unlawful discrimination, harassment and retaliation

28   by CHP's commanders, managers, and supervisors, and suffered emotional distress, including but not

limited to emotional pain and suffering, mental anguish, humiliation, depression and hopelessness, in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### FAILURE TO REASONABLY ACCOMMODATE

### Fair Employment and Housing Act (Cal. Gov. Code §§ 12940(m))

135.    Plaintiff incorporates herein all previously alleged paragraphs 1 through 134 above.

136.    Under FEHA, it is an unlawful employment practice for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" (Gov. Code, § 12940, subd. (m)).

137.    "Reasonable accommodation" may include either of the following:

(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.

(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  Gov. Code §12926(p)

138.    Plaintiff is at all times material hereto an employee covered by the FEHA, prohibiting discrimination in employment based upon disability. Plaintiff suffers from high blood pressure and Atrial Fibrillation ("A-fib")—an abnormal heart rhythm condition. The insurmountable amount of stress Defendant has subjected Plaintiff to on an ongoing basis has increased Plaintiff's A-fib episodes causing Plaintiff to feel extremely fatigued, shortness of breath, light headed, and rapid heart palpitations.

139.    Additionally, Plaintiff's medical condition puts him at a higher risk of contracting the deadly virus of COVID-19, making vital for Plaintiff to maintain reduced contact with others. It is for this reason Plaintiff requested a reasonable accommodation, to telework on August 14, 2020. Defendant honored Plaintiff's request for the first year by simply requesting medical documentation which Plaintiff provided. However, on September 15, 2021, Defendant provided Plaintiff a copy of the August 14, 2020 reasonable accommodation request, denying his request with the pretext of

1   "operational needs of the command" and ordered Plaintiff to return back to work on September 20,

2   2021.

3        140.    Pursuant to CHP policy, Defendant had a duty to respond within ten working days of

4   Plaintiff making the reasonable accommodation request, but Defendant responded a year and a month

5   later. Plaintiff appealed Defendant's decision on September 22, 2020.

6        141.    Plaintiff had been performing most, if not all, of his job duties without a problem for

7   over a year prior to being required to return back to work. The reasonable accommodation Plaintiff

8   requested would have allowed him to safely continue performing the essential functions of his job

9   while reducing his exposure to the deadly virus. In no way is this accommodation request causing an

10  undue hardship on the Defendant as most of its workforce has been teleworking in one form or another

11  including those who work in Plaintiff's unit.

12       142.    As a result of CHP's conduct, Plaintiff has suffered damages, including economic

13  losses, and emotional distress, in an amount to be determined at trial.

14                              **EIGHTH CAUSE OF ACTION**

15                      **FAILURE TO ENGAGE IN INTERACTIVE PROCESS**

16              **Fair Employment and Housing Act (Cal. Gov. Code §§ 12940 (n))**

17       143.    Plaintiff incorporates herein all previously alleged paragraphs 1 through 142 above.

18       144.    Under FEHA, employers are required to engage in good faith interactive process with

19  employees in need of reasonable accommodation.  The interactive process is to determine whether a

20  reasonable accommodation would allow the employee to perform the necessary functions of the job

21       145.    In  August 2020, Plaintiff submitted to CHP his doctor's note recommending that he

22  be allowed to work remotely due to a pre-existing medical condition. Plaintiff was permitted to work

23  was permitted to work remotely as CHP's accommodation to Plaintiff's request. CHP cut short the

24  accommodation provided to the Plaintiff when he was ordered to report back to the worksite on or

25  about June 8, 2020 for no reason. Plaintiff did not have the necessary doctor's clearance at the time

26  that he was ordered to report back to the worksite.

27       146.    In August 2020, Plaintiff again submitted a doctor's note with a request to work

28  remotely. Plaintiff was allowed to work from home commencing on August 17, 2020. Plaintiff

submitted his updated doctor's note in August 2021 and in September 2021, both notes indicate the doctor's recommendation for Plaintiff work remotely until February 22, 2022. However, on or about September 14, 2021, CHP denied his request for reasonable accommodation due to the alleged "operational needs of the command" without first determining if there are other options that they may offer to the Plaintiff without undue hardship to CHP.

147.    In both instances, CHP knew Plaintiff had a medical condition and was in need of reasonable accommodation thereby  triggering their duty to engage in good faith the interactive process and ascertain if a reasonable accommodation could be granted without an undue burden . The facts reveal that CHP failed to fulfill its duty under the law and engaged in such process.

148.    As a result of CHP's conduct, Plaintiff has suffered damages, including economic losses, and emotional distress, in an amount to be determined at trial.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable in this action. Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   For general and compensatory damages according to proof;

2.   For penalties pursuant to the ADA (42 U.S.C. § 12203 *et. seq*)**;**

3.   For pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary compensatory damages;

4.   Removal of the negative Performance Appraisal, Memorandum of Counseling and Interim Reporting and all other adverse write-ups from Plaintiff's personnel file;

//
//
//
//
//
//

1        5.   For pre and post judgment interest;

2        6.   For cost of suit and attorney's fees as allowed by law; and

3        7.   For such other relief as may be deemed proper by the Court.

4

5    Date:   January 18, 2022                    LAW OFFICES OF DENISE EATON-MAY

6

7                                        By:   __/s/ Denise Eaton-May_____

8                                               DENISE EATON-MAY
                                                Attorneys for Plaintiff
9                                               ADRIAN ROMERO, JR.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

STATE OF CALIFORNIA | State and Consumer Services Agency                                           GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove, CA | 95758
800-884-1684 | Videophone for the DEAF 916-226-5285
www.dfeh.ca.gov | e-mail: contact.center@dfeh.ca.gov

| | |
|---|---|
| EEOC Number: | 555-2020-00708C |
| Case Name: | Adrian Romero, Jr. vs. CALIFORNIA HIGHWAY PATROL |
| Filing Date: | March 18, 2020 |

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH), a state agency, and the United States Equal Employment Opportunity Commission (EEOC), a federal agency. The complaint will be filed in accordance with California Government Code section 12960. The notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your state Right to Sue notice. This state Right to Sue Notice allows you to file a private lawsuit. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above- referenced complaint. The lawsuit may be filed in a State of California Superior Court.

Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice or, pursuant to Government Code section 12965, subdivision (d)(2), 90 days from receipt of the federal right-to-sue letter from the EEOC, whichever is later. You should consult an attorney to determine with accuracy the date
by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

(Revised 11/2016)

Exhibit B

U.S. Department of Justice

Civil Rights Division

---

*Disability Rights Section – 4 Con*
*950 Pennsylvania Ave, NW*
*Washington, DC 20530*

April 30, 2021

DJ# 205-12-0

**VIA EMAIL:d.may@eaton-maylaw.com;aromero32@live.com**

Adrian Romero, Jr. c/o
Denise Eaton-May, ESQ
1290 B Street, Suite 316
Hayward, CA 94541

Re:    EEOC Charge Against:    California  Highway Patrol
       EEOC No.:              555-2020-00708
       DJ#:                   205-12-0

Dear Mr. Romero:

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

It has been determined that the Department of Justice (the Department) will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC).  This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation on your case was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111, et seq., against the above-named respondent.  If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, if you wish to pursue this matter, you should consult an attorney at your earliest convenience.  If you are unable to find an attorney, you may wish to contact the EEOC or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), referenced in Section 107(a) of the ADA, 42 U.S.C. § 2117(a).

If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to:

Steven T. Hunt
Director
Oakland Local Office
U.S. Equal Employment Opportunity Commission
1301 Clay Street, Ste.1170N
Oakland, CA  94612-5217

Please note, due to COVID-19 there may be a delay in obtaining copies of the case file.

We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case. Enclosed you will find a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA).

Sincerely,
Pamela S. Karlan
Principal Deputy Assistant Attorney General

BY: /s/ Amanda Maisels
Amanda Maisels
Deputy Chief
Disability Rights Section

Enclosures:
Notice of Rights under the ADAAA

cc:     California Highway Patrol
        EEOC-Oakland Local Office

2

# Exhibit C

**U.S. Department of Justice**

Civil Rights Division

---

*Disability Rights Section – 4 Con*
*950 Pennsylvania Ave, NW*
*Washington, DC  20530*

September 29, 2021

DJ# 205-11-0
**VIA EMAIL: denise.may@eaton-maylaw.com**

Adrian Romero, Jr c/o
Denise Eaton-May, ESQ
Law Offices of Denise Eaton May
1290 B Street, Suite 316
Hayward, CA  94541

Re:     EEOC Charge Against:        California Highway Patrol
        EEOC No.:                   555-2021-00438
        DJ#:                        205-11-0

Dear Mr. Romero:

## NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge, and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you or your attorney has specifically requested this Notice, <u>you are hereby notified that you have the right to institute a civil action against the above-named respondent under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq.  If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.</u>  This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

If you or your attorney has any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to: Oakland Local Office, U.S. Equal Employment Opportunity Commission.  Please note, due to COVID-19 there may be a delay in obtaining copies of the case file.

Enclosed you will find a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA). We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,
Kristen Clarke
Assistant Attorney General
Civil Rights Division

BY: /s/ Celeste A. Adams-Simmons
Celeste A. Adams-Simmons
Senior Investigator
Disability Rights Section

Enclosures:
Notice of Rights under the ADAAA

cc:   California Highway Patrol
EEOC- Oakland Local Office

2

# Exhibit D

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 15, 2021

Adrian, Jr. Romero
4217 Zaccaro Way
Elk Grove, CA 95758

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 202111-15374412
        Right to Sue: Romero / California Highway Patrol

Dear Adrian, Jr. Romero:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 15, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

DFEH-ENF 80 RS

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Adrian, Jr. Romero                                           DFEH No. 202111-15374412

                                       Complainant,

vs.

California Highway Patrol
601 N. 7th Street, Bldg. C
Sacramento, CA 95811

                                       Respondents

_____

**1.** Respondent **California Highway Patrol** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Adrian, Jr. Romero**, resides in the City of **Elk Grove,** State of **CA.**

**3.** Complainant alleges that on or about **September 15, 2021**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's race, national origin (includes language restrictions), color, medical condition (cancer or genetic characteristic), other.

**Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color, medical condition (cancer or genetic characteristic), other and as a result of the discrimination was denied hire or promotion, reprimanded, demoted, denied any employment benefit or privilege, denied reasonable accommodation for a disability, other, denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was denied hire or promotion, reprimanded, denied any employment benefit or privilege, denied reasonable accommodation for a disability, other, denied work opportunities or assignments, denied or forced to transfer.

Date Filed: November 15, 2021

DFEH-ENF 80 RS

1

2 **Additional Complaint Details:**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-2-

*Complaint – DFEH No. 202111-15374412*

27

Date Filed: November 15, 2021

28

DFEH-ENF 80 RS

VERIFICATION

I, **Denise Eaton-May**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On November 15, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Hayward, CA**

-3-
*Complaint – DFEH No. 202111-15374412*

Date Filed: November 15, 2021

DFEH-ENF 80 RS